[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 22, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-13725

_____

D. C. Docket No. 97-01492-CV-DLG

COMMODITY FUTURES TRADING COMMISSION,

Plaintiff-Appellant,

versus

MASS MEDIA MARKETING, INC.,
a Florida Corporation,
COMMODITY REFERRAL SERVICE, INC.,
a.k.a. Commodities Referral Service, Inc., et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 22, 2002)

Before BIRCH and WILSON, Circuit Judges, and DOWD[*], District Judge.

BIRCH, Circuit Judge:

This appeal arises from the district court's grant of summary judgment to Mass Media Marketing, Inc. ("Mass Media"), Commodity Referral Service, Inc. ("CRS"), and Rolando Nanasca (hereinafter collectively known as "Advertisers"), and the district court's denial of a cross-motion for partial summary judgment by Commodity Futures Trading Commission ("CFTC"). The district court held that the Introducing Broker registration and record-keeping requirements of the Commodity Exchange Act ("CEA") did not apply to Advertisers. The court found that, as advertisers, they were not engaged in soliciting or accepting orders for options contracts. Therefore, Advertisers do not fall within the CEA's definition of an "Introducing Broker." Further, the district court held that the CFTC may not validly enforce its anti-fraud regulation against Advertisers because they did not "offer to enter into, enter into or confirm the execution of any transaction involving any commodity regulated by the Act" as required by the enabling statute of the CEA. We AFFIRM.

---

[*] Honorable David D. Dowd, Jr., U.S. District Judge for the Northern District of Ohio, sitting by designation.

## I. BACKGROUND

Mass Media and CRS are advertising, marketing, video production and syndication companies. Both companies produce commercials designed to solicit members of the general public to invest in commodity options. The broadcasts instruct viewers to call an 800-number to obtain information about commodity options. Viewers who respond to the advertisements reach an independent answering service that collects the callers' names, addresses, and telephone numbers and then sell the information to a commodity broker, or Introducing Broker[1], as a list of "leads."

Advertisers broadcast two types of commodity commercials: sponsored and blind advertisements. Sponsored advertisements were produced at the request and under the direction of a specific Introducing Broker, which stated the broker's name on the advertisement. Blind advertisements, on the other hand, were

---

[1] Congress amended the CEA in 1982 to resolve the need to "guarantee accountability and responsible conduct of such persons" who "deal with commodity customers and, thus have the opportunity to engage in abusive sales practices." R4-133-10. All persons who solicit or accept customer orders for Futures Commission Merchants ("FCM") are required to register as either "associated persons" of the FCMs, or as Introducing Brokers. Introducing Brokers, unlike associated persons of a FCM, are independent entities that solicit and accept customer orders, but use the services of FCMs for clearing, record keeping and retaining customer funds.

produced without reference to a specific Introducing Broker.[2]  The leads generated by these advertisements were sold to any interested Introducing Broker.

Nanasca, the president of Mass Media and CRS, was involved in writing the scripts, determining the visual text, negotiating the advertised rates, and marketing any leads generated by the advertisements.  Nanasca ultimately approved blind advertisements.

Advertisers also began a program called "evaluated plus leads" where they would call back individuals who had once responded to an advertisement.  If the prospective customer stated that he or she had was interested in speaking to a broker, Advertisers would sell the lead to any interested Introducing Broker.

The Introducing Broker paid Advertisers based on the number of names, or leads, generated by the Introducing Broker's commercial.  Advertisers were not paid on the number of callers who subsequently opened accounts through the Introducing Broker or on the number of trades placed by the callers who became customers.  Advertisers never collected any money from callers, nor did they discuss commodity investments with these callers.  These discussions took place

---

[2] Advertisers voluntarily stopped broadcasting blind advertisements in early 1997, after the National Futures Association ("NFA"), an industry self-regulatory organization, issued notice that it disapproved of non-sponsored material in May of 1996.  In response, Nanasca formed CRS to produce commodities advertising and attempted to register with the NFA as an Introducing Broker.

once an Introducing Broker purchased the leads from Advertisers, and then contacted the caller itself.

The CFTC filed a complaint against Advertisers alleging that they used fraudulent advertisements and infomercials to solicit potential customers to invest in commodity options, which violated certain registration and record-retention regulations issued by the CFTC, 17 C.F.R. § 33.10. Advertisers challenged the CFTC's jurisdiction to apply this rule because they were involved in soliciting potential customers for options trading through brokers and not involved in the actual trades. The district court found that Advertisers do not fall within the CEA's definition of an Introducing Broker, and therefore, are not required to register. Further, the district court held that the CFTC may not validly enforce its anti-fraud regulation against Advertisers because they did not "offer to enter into, enter into or confirm the execution of any transaction involving any commodity regulated by the Act" as required by the enabling statute. R4-133-25. The CFTC appeals both issues.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo, apply the same standard as the district court, and review "all facts and reasonable inferences in the light most favorable to the nonmoving party." Allison v. McGhan Med.

5

Corp., 184 F.3d 1300, 1306 (11th Cir. 1999). Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A.    CEA's Introducing Broker Registration Requirement

An Introducing Broker, as defined under the CEA, is:

> any person (except an individual who elects to be and is registered as an associated person of a futures commission merchant) engaged in *soliciting or in accepting orders* for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market who does not accept any money, securities, or property (or extend credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom.

7 U.S.C. § 1a(14) (emphasis added).

The CFTC claims that by soliciting and referring prospective investors to Introducing Brokers, Advertisers acted as unregistered Introducing Brokers in violation of the CEA. Advertisers, on the other hand, contend that the plain language of the statute does not cover "general solicitation to the public through television advertisements, which neither invite nor accept the placement of an order." R4-133-11.

We follow the two-step framework of Chevron, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781-82 (1984), to

6

analyze an agency's interpretation of a statute. The first step in the Chevron

analysis requires the court to inquire whether Congress has directly spoken to the

precise question at issue.

> If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute."

Id. at 842-43, 104 S. Ct. at 2781-82.

The district court found the phrase "engaged in soliciting or in accepting

orders" to be ambiguous since the CEA does not define the term "soliciting" or

explain its application. Next, the district court looked to the CFTC's interpretation

of the phrase to determine whether it was based on a permissible construction of

the CEA. The CFTC explains the phrase as "covering customer 'solicitation[] for

compensated referral to other registrants so that a trading relationship can be

initiated and the customer's orders executed.'" R4-133-13. The CFTC relied on

Wisconsin Dept. of Revenue v. William Wrigley, Jr. Co., 505 U.S. 214, 112 S. Ct.

2447 (1992), where the Court discussed activities that constitute "solicitation of

7

orders."[3]  Based on <u>Wrigley</u>, the district court found that "a key question in determining whether an activity constitutes 'solicitation of orders' is whether the only objective for conducting the activity is to facilitate requests for purchases.  If so, the activity is the solicitation of an order."  R4-133-14-15.

The district court determined that the CFTC's interpretation of the phrase "engaged in soliciting or in accepting orders" was not a permissible construction of the CEA.  It reasoned that Advertisers' primary goal was to obtain leads for Introducing Brokers, not orders for commodity futures.  The court found that Advertisers' activities were better characterized as a "customer finder" rather than an Introducing Broker.  Moreover, the CFTC's prior interpretation of the Introducing Broker requirement, which "require[s] registration as Introducing Brokers those persons who were formerly agents of FCMs or who performed the types of activities traditionally engaged in by agents," cannot be reconciled with the CFTC's current interpretation.  <u>Id.</u> at 17 (quotations omitted).  Based on the CFTC's prior interpretation of the Introducing Broker requirement, Advertisers would not be required to register under the CEA.  Furthermore, the district court noted that the CEA's legislative history does not reference advertisers or an intent

---

[3] The district court noted that the facts of <u>Wrigley</u> are inapposite to the facts in this case, nonetheless, the Court's discussion of the activities that constitute "solicitation of orders" is helpful to this analysis.

by Congress to regulate as Introducing Brokers persons who neither invite nor accept the placement of an order.[4]

The district court was correct in concluding that the CFTC's interpretation was impermissible. Advertisers were never involved in the making of an offer to enter into a commodity contract or assisting customers in carrying out such a transaction. Customers were asked to call a toll free number after viewing a commodities advertisement. An answering service operator would give the caller a description of the product or service being offered, and then obtain the caller's name, address and telephone number. These leads were then sold to Introducing Brokers. That Introducing Broker would then contact the prospective customer to discuss investing or placing an order for commodities. As the district court notes, the "simple act of referral does not directly jeopardize the interests of the investing public." Id. at 20 (citation omitted). Therefore, Advertisers "lack the means and incentive to create a scenario for potential misconduct during the solicitation process that triggered the Congressional enactment of the Introducing Broker registration requirement in 1982." Id. at 19-20.

---

[4] The district court noted that Congress' intent was aimed to "resolve[] any uncertainty as to the status of agents of [FCM] and to regulate individuals in their activities of soliciting orders for futures contracts." R4-133-18.

B.      CFTC's Anti-Fraud Regulations

The CFTC argues that it may still enforce its anti-fraud regulations, 17

C.F.R. § 33.10,[5] against Advertisers even if they did not meet the Introducing

Broker registration requirement.  Based on the enabling statute of the CEA, the

district court held that the CFTC acted beyond its jurisdictional scope in extending

its anti-fraud rules to Advertisers who act "in connection with" commodity

options.

Section 4c(b), the enabling statute of the CEA, provides:

> No person shall offer to enter into, enter into or confirm
> the execution of, any transaction involving any
> commodity regulated under this chapter which is of the
> character of, or is commonly known to the trade as, an
> "option" . . . contrary to any rule, regulation, or order of
> the Commission prohibiting any such transaction or
> allowing any such transaction under such terms and
> conditions as the Commission shall prescribe.

---

[5] 17 C.F.R. § 33.10 states:
> It shall be unlawful for any person directly or indirectly - -
> (a) to cheat or defraud or attempt to cheat or defraud any
> other person;
> (b) to make or cause to be made to any other person any
> false report or statement thereof or cause to be entered
> for any person any false record thereof;
> (c) to deceive or attempt to deceive any other person by any
>  means whatsoever
> in or in connection with any offer to enter into, the entry
> into, the confirmation of the execution of, or the
> maintenance of, any commodity option transaction.

7 U.S.C. § 6c(b)

The district court employed the Chevron analysis, as set forth above, and determined that Congress unambiguously expressed its intent in plain language of the enabling statute of the CEA. The district court concluded that the statute applies only to those who offer to enter into, enter into or confirm the execution of any commodity transaction. There were no allegations that Advertisers engaged in such activities, and therefore, the CFTC could not impose its anti-fraud regulation on Advertisers.

The CFTC argues that the district court failed to consider the authority granted to it by section 2(a)(1)(A)(i) of the CEA, 7 U.S.C. § 2(i), which provides, in relevant part: "[t]he Commission shall have exclusive jurisdiction . . . with respect to accounts, agreements (including any transaction which is of the character of, or is commonly known to the trade as, an "option" . . .), and transactions involving contracts of sale of a commodity for future delivery . . . ."[6] The CFTC argues that the broad delegation of exclusive and plenary jurisdiction in 7 U.S.C. § 2(i) is sufficient grounds to support 17 C.F.R. § 33.10.

---

[6] Furthermore, the CFTC argues that its jurisdictional authority to promulgate 17 C.F.R. § 33.10 arises from section 8a(5), 7 U.S.C. § 12a, of the CEA, as well. This argument was raised for the first time on appeal, and therefore, we will not consider it.

Nonetheless, the district court's conclusion was not based on whether the CFTC had the authority to promulgate 17 C.F.R. § 33.10.  It found that the CFTC could not impose its rules on entities that are clearly excluded by the CEA. "[Advertisers'] general solicitation through their advertisements never involved the making of an offer to enter into a commodity transaction or assisting customers in carrying out such transactions."  R4-133-18.  Thus, Advertisers' activities do not fall within the boundaries of the CEA or the jurisdiction of the CFTC.

AFFIRMED.