A02A0493. LIVELY et al. v. SOUTHERN HERITAGE INSURANCE COMPANY.

(568 SE2d 98)

POPE, Presiding Judge.

James and Jeanette Lively appeal from the trial court's grant of summary judgment to Southern Heritage Insurance Company on their claim that Southern Heritage failed to pay benefits arising from the loss of their home due to fire.

James Lively purchased insurance from Southern Heritage for his and his wife's home and automobiles. The application form for the homeowner's insurance dated March 21, 1994, includes the question, "Has any insurance been declined, canceled or non-renewed (last 3 years)?" Lively's completed application reflects a negative answer in response to that question. The application also indicates that the Livelys had no prior insurance policy on their home and no prior loss history. But, in fact, the Livelys had been refused a renewal of their homeowner's insurance by Allstate Insurance Company due to a fire that resulted in the total destruction of their home in January 1993. And the Livelys had an earlier total fire loss on their home in 1980.

Although the homeowner's insurance application appears to contain Lively's signature, Lively presented expert affidavit testimony indicating that the signature on the accompanying application for automobile insurance was forged. And Lively stated in his own affidavit that he did not recall signing the two applications, nor did he recall being asked about Allstate's refusal to renew his insurance. He did acknowledge, however, that he was aware that the homeowner's application incorrectly indicated that he had no prior insurance on the house, but he said that the pertinent response had been filled in by the insurance agent, who had sold him a separate builder's risk policy, and that he assumed she "knew what she was doing."

After the fire at issue, which occurred on October 14, 1997, Southern Heritage began processing the Livelys' claim, but ultimately denied coverage after the Livelys filed their complaint in this case. Southern Heritage subsequently moved for summary judgment on the Livelys' claim, asserting that the homeowner's policy was void due to material misrepresentations in the application. In support of this motion, Southern Heritage presented the affidavit of the underwriter for the Livelys' insurance application stating that she would not have approved the policy if she had known of the prior fire losses

and the nonrenewal. The trial court granted Southern Heritage's motion.

1. The Livelys first assert that the trial court erred in granting the motion because they submitted an expert affidavit stating that under certain circumstances, an insurance company may issue a policy even where an insured has prior losses and nonrenewals. They assert that this affidavit directly contradicts that of Southern Heritage's underwriter, thus raising an issue of fact. We agree.

To void the Livelys' insurance policy, Southern Heritage must demonstrate both that the Livelys made false representations and that the misrepresentations were material from the view of a prudent insurer:

> In order to void a policy of insurance for a misrepresentation in the application, the insurer must show that the representation was false and that it was material in that it changed the nature, extent, or character of the risk. A material misrepresentation is one that would influence a *prudent insurer* in determining whether or not to accept the risk, or in fixing a different amount of premium in the event of such acceptance.

(Citations and punctuation omitted; emphasis supplied.) *Jackson Nat. Life Ins. Co. v. Snead*, 231 Ga. App. 406, 410 (3) (b) (499 SE2d 173) (1998). See also OCGA § 33-24-7. This standard has been interpreted to be an objective one. See *Woods v. Independent Fire Ins. Co.*, 749 F2d 1493, 1497 (11th Cir. 1985). Thus the issue of materiality is ordinarily a question for the jury, unless the evidence excludes every reasonable inference except that it was material, in which case it becomes a question of law for the court. *Snead*, 231 Ga. App. at 410 (3) (b).

Here, there is no question that the application contained false representations, but the testimony is contradicted as to whether a prudent insurer would have issued the policy even with notice of the Livelys' prior losses and insurance history. The affidavit submitted by Southern Heritage's underwriter does not set forth any bright-line company policies stating that coverage is denied if a prior nonrenewal or prior losses exist. Rather, it contains only the underwriter's blanket statements that she would not have issued the policy if she had known of the Livelys' prior history. The Livelys' expert's affidavit counters that prior nonrenewals and losses do not automatically preclude coverage, but rather notes that insurance companies will consider a number of factors in determining whether to extend coverage.

These conflicting affidavits present a jury question on the issue of whether the false statements in the Livelys' application would be

material to a prudent insurer. See *Snead*, 231 Ga. App. at 410 (3) (b); *United Family Life Ins. Co. v. Shirley*, 242 Ga. 235, 236-237 (248 SE2d 635) (1978). Compare *Graphic Arts Mut. Ins. Co. v. Pritchett*, 220 Ga. App. 430, 432-433 (2) (469 SE2d 199) (1995); *Taylor v. Ga. Intl. Life Ins. Co.*, 207 Ga. App. 341, 343 (427 SE2d 833) (1993); *Davis v. John Hancock Mut. Life Ins. Co.*, 202 Ga. App. 3, 5 (1) (413 SE2d 224) (1991) (no jury issue where defendant underwriter's testimony as to materiality was uncontradicted).

2. The Livelys further assert that Southern Heritage is estopped from taking the position that the policy is void due to misrepresentations in the application because the company has never refunded any of the premiums paid by the Livelys.

In an early decision, our Supreme Court determined that it is not a prerequisite for an insurance company to return an insured's premiums in order to assert the defense that an insurance contract is void due to fraud in the inducement. *Columbian Nat. Life Ins. Co. v. Mulkey*, 146 Ga. 267, hn. 2 (91 SE 106) (1916). But the Court qualified this holding by noting that an insurance company could be estopped from asserting the defense if it did not act promptly, upon learning of the fraud, to rescind the contract but instead treated it as valid and enforceable:

> Of course we do not mean to hold that an insurance company might not be estopped from setting up fraud practiced upon it in the procurement of the policy, if it should appear that after the discovery of such fraud the company did not promptly move to have the contract of insurance rescinded, but treated it as valid and binding and continued to receive the premiums thereon.

Id. at 272 (2).[1]

And subsequent appellate decisions have determined that the failure to return premiums is a factor to be considered in determining whether an insurance company has waived the defense by treating the policy as an enforceable contract. See, e.g., *Thompson v. Permanent Gen. Assurance Corp.*, 238 Ga. App. 450, 452 (519 SE2d 249)

---

[1] We note that *Mulkey* was decided under the Georgia Code as it existed in 1916. At the time, the insurance statutes provided that "Every application for insurance must be made *in the utmost good faith*, and the representations contained in such application are considered as *covenanted to be true* by the applicant." (Punctuation omitted; emphasis supplied.) *Mulkey*, 146 Ga. at 268 (2), quoting Section 2479 of the 1910 Code. In contrast, the current version of the statute provides, "All statements and descriptions in any application for an insurance policy . . . by or in behalf of the insured . . . shall be deemed to be representations and not warranties." OCGA § 33-24-7 (a). The Supreme Court of Georgia has not addressed the issue before us under the current version of the statute.

(1999); *Florida Intl. Indem. Co. v. Osgood*, 233 Ga. App. 111, 115 (1) (503 SE2d 371) (1998); *Haugseth v. Cotton States Mut. Ins. Co.*, 192 Ga. App. 853, 855 (386 SE2d 725) (1989). For example, one decision states that "[a]fter learning of a misrepresentation in the application, an insurer waives the defense that the misrepresentation voided the policy if it treats the policy as valid and binding and retains the insured's premiums as earned." *Thompson v. Permanent Gen. Assurance Corp.*, 238 Ga. App. at 452.

Here, the Livelys' policy provided that the entire contract would be void "if whether before or after a loss, an 'insured' has: (A) [i]ntentionally concealed or misrepresented any material fact or circumstances; (B) [e]ngaged in fraudulent conduct; or (C) [m]ade false statements; relating to this insurance." But fraud does not automatically void a contract; rather, it renders it voidable at the election of the injured party. OCGA § 13-5-5. Therefore, "[i]f a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise, he cannot avoid or rescind such contract." (Citations and punctuation omitted.) *Haugseth v. Cotton States Mut. Ins. Co.*, 192 Ga. App. at 855.

The evidence shows that Southern Heritage learned of the misrepresentations in the application in October 1997 shortly after the fire occurred, but it did not take the position that the policy was void as a result of those misrepresentations until after suit was filed one year later in October 1998. In the interim, Southern Heritage continued to investigate the Livelys' claim, while purporting to reserve all defenses. During its investigation, Southern Heritage asked the Livelys to provide extensive documentation to support their claim, and at one point (at a time when the Livelys were not represented by counsel) the insurance company relied upon the policy to urge the Livelys to send the requested documents: "I shall again ask you to please . . . provide the records and documents we ask for. . . . Please refer to your policy, pages 9 to 12, Section One-Conditions, which states you must provide these records and documents." And it is undisputed that Southern Heritage has not returned any premiums paid by the Livelys.

While Southern Heritage asserts that its actions were part of a necessary investigation to avoid possible bad faith liability, the Livelys assert that the insurance company was simply hoping to string them along until the one-year contractual limitation period expired on their claim.[2] We believe that the record presents genuine

---

[2] The record indicates that on October 12, 1998, two days before the contractual limitation period was due to expire, Southern Heritage sent the Livelys a letter indicating that the limitation period contained in the policy would apply to their claim.

issues of material fact as to whether Southern Heritage waived its defense that the policy is void, and thus summary judgment in favor of the insurance company was improper.

We are not persuaded by Southern Heritage's argument that the decision in *Massachusetts Bay Ins. Co. v. Hall*, 196 Ga. App. 349 (395 SE2d 851) (1990), dictates a different result. In that case, the insurer contended that the insured had committed fraud in a proof of claim, not in the initial application. This Court found that under the circumstances, the insurer was not required to return the premium because the fraud arose due to "some action or inaction on the part of the insured in connection with a claim occurring during the policy's life." Id. at 352 (2) (a). In other words, the insurer was not, as Southern Heritage is here, asserting that the entire policy was void; rather it asserted that the insured's right to recover for that claim was void. Under those circumstances, the Court found that the insurer had earned the premiums because it had assumed the risk of coverage of all legitimate claims. Id. at 351-352 (2) (a). But in this case, Southern Heritage is contending that it has no liability for any of the Livelys' claims, even if they are legitimate. Accordingly, the *Hall* case is distinguishable from cases such as this one dealing with fraud in the insurance application, as the panel in that case recognized. Id. at 352 (2) (a).

3. The Livelys also assert that Southern Heritage's renewal of the insurance policy corrected the misrepresentations contained in the application. We find no merit in this argument.

The policy was renewed in April 1997 because the agent who originally handled the Livelys' insurance no longer represented the company. The renewed policy was in effect at the time of the fire. The parties apparently continued to rely upon the application submitted in 1994 for the renewal. By the time of the renewal in 1997, more than three years had passed since the Livelys had been denied a renewal of their Allstate policy. Therefore, in 1997, the Livelys could truthfully have given a negative response to the application's question as to whether their insurance had been nonrenewed in the past three years.

Even assuming, however, without deciding, that a prior misrepresentation could somehow be rectified by the passage of time, we note that the application still states that the Livelys had no prior insurance and no loss history in response to questions containing no time restrictions. Therefore, even under the Livelys' renewal theory, misrepresentations remain.

4. The Livelys next contend that the trial court failed to construe the evidence of the forgery of the automobile policy in their favor. They assert that the forgery on that application raises questions regarding the legitimacy of the homeowner's application because the

two were submitted together for coverage under a unified policy number. Although the Livelys' handwriting expert testified that the signature on the automobile application was a forgery, he opined that the signature on the homeowner's application was "probably" that of James Lively. In addition, while James Lively did not recall being questioned about nonrenewal, he admits that he was aware that application submitted on his behalf incorrectly reflected that he had no prior insurance on the property, although he asserts that he relied upon his agent's expertise to respond to that question.

As we have already determined that the trial court erred in granting summary judgment on the Livelys' claims, we do not find it necessary to address the specific arguments raised in this enumeration, but simply note that the trier of fact will have to address any conflicts in the evidence regarding the misrepresentations.

*Judgment reversed. Ruffin and Barnes, JJ., concur.*

DECIDED JUNE 27, 2002 ▮

*Mazursky & Dunaway, Randall A. Constantine, Albert H. Dallas, Robert E. Richardson,* for appellants.

*Mabry & McClelland, Robert M. Darroch, Gino L. Montoya,* for appellee.

