[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 30, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-10749

_____

D. C. Docket No. 06-00695-CV-1-WSD

AMERICAN GENERAL LIFE INSURANCE COMPANY,

Plaintiff-Counter-
Defendant-Appellee
Cross-Appellant,

versus

SCHOENTHAL FAMILY, LLC,
LIBERTY ONE FUNDING TRUST,

Defendants-Counter-
Claimants-Appellants
Cross-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(January 30, 2009)**

Before BIRCH and PRYOR, Circuit Judges, and STROM,[*] District Judge.

PRYOR, Circuit Judge:

This appeal concerns whether a statute of Georgia, Ga. Code Ann. § 33-24-7(b), allows an insurer to rescind a life insurance policy because the deceased insured misrepresented his net worth and annual income in his application for the policy. Samuel Schoenthal misrepresented in his application for a policy of $7,000,000 that his net worth was $10,700,000 and his annual income was over $150,000; Schoenthal's net worth, in fact, was $160,000 and his annual income was $7,200. The district court ruled, as a matter of law, that American General Life Insurance Company was permitted to rescind the policy because Schoenthal's misrepresentations were material, see Ga. Code Ann. § 33-24-7(b)(2), and American General had not waived its right to rescind the policy. Schoenthal's beneficiaries, Schoenthal Family, LLC, and Liberty One Funding Trust, appeal the summary judgment in favor of American General and the decisions to exclude the testimony of their expert witness and admit the testimony of the expert witness of American General. We conclude that the district court did not abuse its discretion when it admitted one expert witness's testimony and excluded the other expert witness's testimony, and we conclude that the district court correctly ruled that

_____

[*] Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

American General was entitled to rescind Schoenthal's policy under subsection 33-24-7(b)(2). We affirm the summary judgment in favor of American General and dismiss the cross-appeal filed by American General.

## I. BACKGROUND

Samuel Schoenthal applied for a policy of life insurance from American General in conjunction with his participation in the Liberty Premium Finance Program. As the district court explained, the program involved a "maze of related entities" and was "a complicated insurance investment mechanism for which [Schoenthal] technically did not qualify, and in which he ultimately retained very little financial interest in the policy that nominally was intended to insure his life." The various entities that comprised the program worked together to finance a high-value life insurance policy that Schoenthal would have been otherwise unable to afford. In exchange, the entities reserved for themselves the vast majority of the expected payout of the policy.

In February 2004, Marc Dovi Faivish, an agent of HK Ventures, Inc., learned that Schoenthal wanted to apply for life insurance. HK Ventures was an insurance broker that represented individuals who applied for life insurance coverage. Amy Holmwood was the president of HK Ventures, and Nathan Chopp was also an agent of HK Ventures. As part of the application, Faivish asked

3

Schoenthal about his financial condition.  Faivish discussed with Schoenthal the information contained in the application and witnessed Schoenthal sign the application.

The contract between HK Ventures and American General stated that HK Ventures was an "independent contractor."  HK Ventures submitted to American General a request for a quote for a life insurance policy of $10,000,000 for Schoenthal.  After it received this request, American General initiated its underwriting process, which included a telephone interview conducted by an inspector.  During the interview, Schoenthal stated that his net worth was $10,700,000 and his annual income was $150,000.  American General obtained an inspection report regarding Schoenthal, and its underwriters reviewed and recorded the information in the report.

On September 7, 2004, Schoenthal submitted a written application for insurance to American General.  The application, signed by Schoenthal, represented that his net worth was $10,700,000 and his annual income was "[$]150,000+."  The application named Schoenthal Family, LLC, as the owner of the policy, the payor of the premium, and the beneficiary.

Scott Graham, an underwriter for American General, reviewed the application and recommended that American General approve the application.

4

American General approved the application and issued policy no. U10018932L in the amount of $7,000,000. The policy identified Schoenthal as the insured and Schoenthal Family, LLC, as the beneficiary and owner. After the policy was issued, it was immediately assigned to Liberty One Funding Trust.

The day after he submitted his application, Schoenthal executed an acknowledgment form that stated that he had read the requirements for participation in the program. The requirements of the program included that the potential insured's "personal net worth is at least $5 million." Schoenthal also executed a document entitled "Insured's Consent," in which he again represented that he had "a net worth in excess of US $5,000,000," and a "Liberty Premium Finance Program Financial Statement Form," in which Schoenthal stated that his net worth was $10,700,000.

After Schoenthal died in July 2005, at the age of eighty-two, American General conducted a contestable claim investigation. The investigation revealed that Schoenthal's net worth was $160,000 and his annual income was approximately $7,200. The chief corporate underwriter at American General, Kent Major, reviewed Schoenthal's misrepresentations for materiality. Major concluded that "[b]ased upon the income and net worth figures developed in our investigation, we would have declined to issue the $7 million of coverage applied

5

for."

On March 24, 2006, American General denied the claim on Schoenthal's policy, filed its complaint in the district court to rescind the policy, and moved for permission to interplead the premiums it had received under the policy. The district court granted the motion to interplead. The beneficiaries of the policy, Schoenthal Family, LLC, and Liberty One Funding Trust, filed an answer and counterclaim. The beneficiaries contended that American General breached its obligation to pay death benefits, demanded a trial by jury, and denied that the proposed interpleaded funds constituted the full amount owed by American General.

On February 15, 2007, the district court granted a request by American General to extend the discovery deadline. The district court again extended the discovery deadline on March 22, 2007, to allow the parties time to complete necessary depositions. The discovery period was scheduled to end on July 2, 2007.

On May 16, 2007, American General designated Dr. Harold Skipper and Robert DiLisio as expert witnesses and informed the beneficiaries that Skipper was available for deposition on June 12, 13, or 14. The beneficiaries notified American General on June 6, 2007, that its designations were untimely under Local Rule 26.2(C) because the beneficiaries had insufficient time to depose the expert

witnesses designated by American General and designate expert witnesses of their own. The beneficiaries did not notify the district court of the issue and instead suggested to American General that the parties "discuss scheduling in an effort to avoid motion practice on this issue." The beneficiaries deposed Skipper on June 29, 2007, and designated their expert witness, Gregory G. Wimmer, on July 2, 2007, the final day of the discovery period.

The district court granted the motion of the beneficiaries for leave to amend their answer and counterclaim, and the beneficiaries added a claim of bad faith. American General moved for summary judgment and to exclude Wimmer's testimony. The beneficiaries moved to exclude Skipper's testimony. On September 25, 2007, American General tendered a refund of premiums of $570,331.40 in the district court.

The district court admitted Skipper's testimony because the court concluded that Skipper was qualified to testify and his testimony was not unreliable or contradictory. The district court excluded Wimmer's testimony because the beneficiaries did not offer sufficient justification for their failure to designate Wimmer in a timely manner, and the district court alternatively stated that Wimmer's testimony would not create a genuine issue of material fact. The district court granted summary judgment in favor of American General.

## II.  STANDARDS OF REVIEW

Two standards of review govern this appeal.  We review <u>de novo</u> a summary judgment.  <u>Commodity Futures Trading Comm'n v. Mass Media Mktg., Inc.</u>, 297 F.3d 1321, 1324 (11th Cir. 2002).  We review for abuse of discretion decisions about the admission of expert testimony.  <u>United States v. Frazier</u>, 387 F.3d 1244, 1258 (11th Cir. 2004).

## III.  DISCUSSION

Our discussion is divided in four parts.  First, we address the decisions of the district court about the testimonies of expert witnesses.  Second, we address whether American General had a right to rescind the policy under Georgia law.  Third, we address whether American General waived its right to rescind the policy and whether there is a genuine issue of fact about whether American General was estopped from rescinding the policy or denied the claim in bad faith.  Fourth, we explain why the cross-appeal of American General must be dismissed for lack of jurisdiction.

### A.  The District Court Did Not Abuse Its Discretion When It Admitted One Expert Witness's Testimony and Excluded Another Expert Witness's Testimony.

The beneficiaries present two arguments that the district court granted summary judgment based on a flawed record.  First, the beneficiaries contend that the expert testimony of Harold Skipper should have been excluded.  Second, the

8

beneficiaries argue that the testimony of Gregory Wimmer should not have been excluded.

## 1. The District Court Did Not Abuse Its Discretion by Admitting Skipper's Testimony.

The beneficiaries argue that the district court abused its discretion when it admitted Skipper's expert testimony regarding "general insurance industry financial underwriting standards and risk management issues" because Skipper was unqualified and his testimony was unreliable and contradictory. We disagree. Based on the record before it, the district court did not abuse its discretion when it concluded that Skipper's lengthy experience qualified him to testify and that Skipper's testimony was reliable.

Federal Rule of Evidence 702 provides the standard for admission of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, a district court must determine that proffered expert testimony is both reliable and relevant. Daubert v. Merrill Dow Pharm.,

Inc., 509 U.S. 579, 589–92, 113 S. Ct. 2786, 2794–96 (1993).

The beneficiaries argue that Skipper's testimony is unreliable because "[e]xperience alone . . . can never form the basis for expert testimony," but this argument fails. Standards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 151, 119 S. Ct. 1167, 1175–76 (1999). For nonscientific expert testimony, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Id. at 152, 119 S. Ct. at 1176. A district court may decide that nonscientific expert testimony is reliable based "upon personal knowledge or experience." Id. at 150, 119 S. Ct. at 1175.

The district court did not abuse its discretion when it determined that Skipper's education and experience qualified him to testify as an expert about insurance industry standards. Skipper had ample knowledge and experience about that subject. Skipper obtained masters and doctoral degrees in risk management and insurance from the University of Pennsylvania; taught classes in risk management and insurance, including underwriting in general and financial underwriting in particular, at Georgia State University from 1976 until 2005; coauthored a leading college-level textbook on life insurance that included chapters

10

on financial underwriting; and served as a paid consultant to various life insurance companies regarding the issuance of multi-million dollar life insurance polices.

The district court also did not abuse its discretion when it ruled that Skipper's testimony was not contradictory. Skipper testified that insurers "are free to use their own judgments as to the amounts of insurance to approve for issuance, even if the amounts are greater than those indicated by guidelines," but that no insurer would issue a $7,000,000 policy for estate planning purposes to a man whose net worth was less than $200,000. We agree with the district court that these statements are complementary "when taken in the context of Skipper's explanation of the artful nature of financial underwriting, and the logical and economic rationale that underlies it."

## 2. The District Court Did Not Abuse Its Discretion by Excluding Wimmer's Testimony.

The beneficiaries argue that the district court abused its discretion when it excluded Wimmer's testimony for three reasons. First, the beneficiaries argue that the timing of Wimmer's designation was substantially justified. Second, the beneficiaries argue that the untimely designation of Wimmer did not prejudice American General. Third, the beneficiaries argue that the district court refused to consider any remedy other than exclusion.

We need not consider these arguments. The district court provided an

11

alternative ground for its ruling that the beneficiaries have not even addressed. Wimmer's testimony, if admitted, would not create a genuine question of material fact about the materiality of Schoenthal's misrepresentations.

As we explain in the next section, the test for materiality under subsection 33-24-7(b)(2) is the objective standard of conduct of a prudent insurer, but the beneficiaries fail to explain how Wimmer's testimony would create a genuine question of material fact about that issue. Wimmer never offered an opinion that a prudent insurer would have issued the policy had Schoenthal's true financial condition been disclosed. In his expert report, Wimmer evaluated only the actual conduct of American General when it approved the Schoenthal policy, and he faulted the conduct of American General. In his deposition testimony about a hypothetical prudent insurer, Wimmer was, at best, equivocal. He stated, "I can't sit here and testify, under every conceivable condition of financing insurance" whether a prudent insurer would have issued the policy had Schoenthal's true financial condition been disclosed. The district court did not abuse its discretion when it excluded Wimmer's testimony.

*B. American General Was Entitled To Rescind the Policy.*

The beneficiaries argue that the district court erred when it granted summary judgment in favor of American General for three reasons. First, the beneficiaries

12

argue that determining the materiality of Schoenthal's misrepresentations required that the district court consider the actual conduct of American General when it approved the Schoenthal policy. Second, the beneficiaries argue that genuine questions of material fact exist about the materiality of Schoenthal's misrepresentations. Third, the beneficiaries argue that the policy issued by American General requires for rescission actual reliance by the insurer on a material misrepresentation by the insured.

These arguments fail. The first argument fails because the test for materiality under subsection 33-24-7(b)(2) is the objective standard of conduct of a prudent insurer, not a subjective standard about the actual conduct of American General. The second argument fails because the record establishes that Schoenthal's misrepresentations were objectively material. The third argument fails because subsection 33-24-7(b)(2) establishes an independent basis for rescission that is not limited by the language of the policy of American General.

1. The Standard for Materiality Under Subsection 33-24-7(b)(2) Is Objective.

Subsection 33-24-7(b)(2) provides that misrepresentations in an insurance application shall not prevent a recovery under the policy unless the misrepresentations are "[m]aterial either to the acceptance of the risk or to the hazard assumed by the insurer." Ga. Code Ann. § 33-24-7(b)(2). The

13

beneficiaries argue that determining the materiality of Schoenthal's misrepresentations required that the district court consider the actual conduct of American General. We disagree.

The courts of Georgia have held that a material misrepresentation under subsection 33-24-7(b)(2) is "'one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing a different amount of premium in the event of such acceptance.'" Lively v. S. Heritage Ins. Co., 256 Ga. App. 195, 196, 568 S.E.2d 98, 100 (Ct. App. 2002) (quoting Jackson Nat. Life Ins. Co. v. Snead, 231 Ga. App. 406, 410, 499 S.E.2d 173, 176 (Ct. App. 1998)); see also Haugseth v. Cotton States Mut. Ins. Co., 192 Ga. App. 853, 854, 386 S.E.2d 725, 726 (Ct. App. 1989). We have recognized that this standard is objective. "Rather than inquire into what a particular insurer would have done had it known of the insured's misrepresentation . . . Georgia courts employ a reasonableness test, an objective standard of conduct against which to measure the effect of the insured's false declarations." Woods v. Indep. Fire Ins. Co., 749 F.2d 1493, 1497 (11th Cir. 1985). The district court applied the correct standard.

2. Schoenthal's Misrepresentations Were Objectively Material.

The beneficiaries argue, alternatively, that under the objective standard of a prudent insurer, genuine questions of material fact exist about the materiality of

Schoenthal's misrepresentations, but this argument fails. The uncontroverted evidence establishes that Schoenthal's misrepresentations were material. "The issue of materiality is ordinarily a question for the jury, unless the evidence excludes every reasonable inference except that it was material, in which case it becomes a question of law for the court." Lively, 256 Ga. App. at 196, 568 S.E.2d at 100.

The district court considered two kinds of evidence when it determined the materiality of Schoenthal's misrepresentations, and both establish that a prudent insurer would not have issued the policy had Schoenthal's true financial condition been disclosed. First, the district court considered the Swiss Re Underwriting Guidelines. The guidelines are used by numerous insurers and the beneficiaries described the guidelines as a model of reasonable insurance practices. Under the guidelines, Schoenthal's net worth did not warrant insurance for estate planning purposes. Second, the district court considered the uncontroverted testimony of the expert witness of American General, Skipper, that no reasonable insurance company would have issued the policy if Schoenthal's true financial condition had been known. The district court correctly concluded that Schoenthal's misrepresentations were objectively material.

3. Subsection 33-24-7(b)(2) Provides an Independent Basis for Rescission that Is Not Limited by the Language of Schoenthal's Statement as a Proposed Insured.

15

The beneficiaries argue that the policy issued by American General required actual reliance on a material misrepresentation by Schoenthal as a basis for rescission, but we disagree. Schoenthal's application contained a "Statement by the Proposed Insured," which provided, in relevant part, "I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk." (emphasis added). Similar statements of insureds have not been held to limit the right of an insurer to seek rescission under the law of Georgia. See T.J. Blake Trucking, Inc. v. Alea London, Ltd., 284 Ga. App. 384, 384–86, 643 S.E.2d 762, 762–63 (Ct. App. 2007). Express waivers by insurers, not permissive statements by an insured, have been found to limit the right of an insurer to seek rescission. See Hauser v. Life Gen. Sec. Ins. Co., 56 F.3d 1330 (11th Cir. 1995); Executive Risk Indem., Inc. v. AFC Enter., Inc., 510 F. Supp. 2d 1308, 1324–26 (N.D. Ga. 2007); Walker v. United Serv. Auto. Ass'n, 205 Ga. App. 693, 423 S.E.2d 299 (Ct. App. 1992).

*C. American General Did Not Waive Its Right To Rescind the Policy, Is Not Estopped From Rescinding the Policy, and Did Not Deny the Claim in Bad Faith.*

The beneficiaries raise three remaining arguments. They contend that

16

American General waived its right to rescind the policy, is barred by estoppel from rescinding the policy, and denied the claim in bad faith. These arguments fail.

The beneficiaries argue that American General waived its right to rescind the policy because it waited to refund the premium paid under the policy until September 25, 2007, eighteen months after American General received permission from the district court to interplead the premium. We disagree. Immediate tender of the premium was not required by the law of Georgia and the actions of American General were never inconsistent with an intent to rescind the policy.

Under the law of Georgia, a party who alleges fraudulent inducement to enter a contract must elect one of two remedies: "(1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." Megel v. Donaldson, 288 Ga. App. 510, 515, 654 S.E.2d 656, 661 (Ct. App. 2007) (internal quotation marks omitted). If a party takes any action inconsistent with repudiation of the contract, the party waives the right to rescind the contract. Liberty v. Storage Trust Prop., L.P., 267 Ga. App. 905, 910, 600 S.E.2d 841, 846 (Ct. App. 2004). Failure to return a premium is a factor to consider in determining whether the right to rescind has been waived, Lively, 256 Ga. App. at 197, 568 S.E.2d at 101, but immediate tender of the premium is not required as a prerequisite to rescission. A party who seeks rescission must

17

"restore, or <u>offer to restore</u>, the consideration received, as a condition precedent to bringing the action." <u>Nexus Servs., Inc. v. Manning Tronics, Inc.</u>, 201 Ga. App. 255, 410 S.E.2d 810, 811 (Ct. App. 1991) (internal quotation marks and emphasis omitted) (emphasis added).

The district court correctly concluded that American General did not waive its right to rescind. Although American General did not tender the refund of premiums until eighteen months after it received permission from the district court to do so, the complaint filed by American General included a count for permission to interplead. The district court correctly ruled that this request for permission to interplead was an offer to restore the consideration received. The beneficiaries fail to identify any evidence that the actions of American General were ever inconsistent with an intent to rescind the policy.

The beneficiaries argue that a genuine issue of fact remains about whether American General was estopped from rescinding the policy. Insurance companies are estopped from denying liability based on the fraud, misconduct, or negligence of an agent of the company. <u>O'Kelly v. Southland Life Ins. Co.</u>, 167 Ga. App. 455, 457, 305 S.E.2d 873, 875 (Ct. App. 1983). The beneficiaries argue that American General negligently issued the policy based on the misconduct of agents Holmwood, Faivish, and Chopp.

18

This argument fails for two reasons. First, because Holmwood was the president of HK Ventures, an independent insurance agency, and Faivish and Chopp were employees of HK Ventures, all three were agents of Schoenthal, not American General, and their misconduct is not attributable to American General. See Se. Express Sys. v. S. Guar. Ins. Co. of Ga., 224 Ga. App. 697, 700, 482 S.E.2d 433, 435 (Ct. App. 1997). Second, even if Holmwood, Faivish, and Chopp were agents of American General, the beneficiaries present no evidence that Holmwood, Faivish, or Chopp committed misconduct that would support a defense of estoppel. Although insurers are "estopped to assert the falsity of answers to questions contained in an application for insurance or the policy itself, where such false answers are inserted by the insurer's agent to whom the [applicant] for insurance gave correct answers or information," Stillson v. Prudential Ins. Co. of Am., 202 Ga. 79, 82, 42 S.E.2d 121, 124 (1947), the beneficiaries failed to present evidence "that anyone other than [Schoenthal] provided the financial misrepresentations."

The beneficiaries also argue that a genuine issue of fact remains about whether American General denied the claim in bad faith, but Schoenthal's objectively material misrepresentations in his application constituted a reasonable ground for American General to contest the claim. Although determinations of bad

19

faith are ordinarily reserved for the jury, <u>Stegall v. Guardian Life Ins. Co. of Am.</u>, 171 Ga. App. 576, 577, 320 S.E.2d 575, 576 (Ct. App. 1984), bad faith claims fail as a matter of law if the insurer has "any reasonable ground to contest the claim." <u>Grange Mut. Cas. Co. v. Law</u>, 223 Ga. App. 748, 750, 479 S.E.2d 357, 359 (Ct. App. 1996).

### D.  *American General Lacks Standing To Cross-Appeal.*

Because we conclude that American General was entitled to summary judgment under subsection 33-24-7(b)(2), we do not address the alternative arguments that American General was entitled to summary judgment under subsections 33-24-7(b)(1) and 33-24-7(b)(3), and we dismiss the cross-appeal by American General for lack of jurisdiction.  American General does not have standing to cross-appeal a summary judgment in its favor even though the district court rejected arguments of American General about alternative grounds for that summary judgment.  See <u>Agripost, Inc. v. Miami-Dade County</u>, 195 F.3d 1225, 1230 (11th Cir. 1999); <u>Kapp v. Nat'l Football League</u>, 586 F.2d 644, 649–50 (9th Cir. 1978); 15A Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 3902 (2d ed. 1992).  "Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom."  <u>Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper</u>, 445 U.S. 326, 333, 100 S. Ct. 1166, 1171

20

(1980). "A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it." Id. In its defense of a summary judgment, an appellee is entitled to raise alternative arguments that were rejected by the district court, because we may affirm on any ground supported by the record, Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007), but an appellee is not entitled to cross-appeal a judgment in his favor.

## IV. CONCLUSION

The summary judgment in favor of American General is

**AFFIRMED.**