[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14081
Non-Argument Calendar

_____

D.C. Docket No. 2:18-cv-00151-RWS

MORGAN CONCRETE COMPANY,

Plaintiff-Appellant,

versus

WESTFIELD INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 26, 2021)

Before WILLIAM PRYOR, Chief Judge, MARTIN and BRANCH, Circuit Judges.

PER CURIAM:

Morgan Concrete Company appeals the summary judgment against its complaint for breach of contract and for a declaratory judgment that it was owed a defense by and indemnification from Westfield Insurance Company. Morgan Concrete sold its product to another contractor that refused to pay for it after discovering that the concrete failed to comply with engineering and quality requirements. Westfield provided a defense to Morgan Concrete under a reservation of rights, but Westfield withdrew the defense after learning that Morgan Concrete blamed the defect in the product on the other contractor and that it had withheld payment to recover its costs to strengthen the defective product. The district court ruled that Westfield had no duty to defend or indemnify because Morgan Concrete caused no "property damage" under the insurance policy and because the policy excluded coverage for the property damage that Morgan Concrete suffered. We affirm.

## I. BACKGROUND

Westfield issued an insurance policy to Morgan Concrete that included coverage for "those sums that [it] becomes legally obligated to pay as damages because of . . . 'property damage'" "caused by an 'occurrence.'" The policy defined "property damage" as either "[p]hysical injury to tangible property, including all resulting loss of use of that property" or the "[l]oss of use of tangible property that is not physically injured." And the policy defined "occurrence" as "an

accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy contained several exclusions to coverage, including "property damage" to the Morgan Concrete "product."

While the policy was in effect, Georgia Concrete hired Morgan Concrete to supply ready-mix concrete for a multi-level building being constructed at Clemson University in South Carolina. The specifications required concrete that could withstand 5,000 pounds per square inch. During construction of the second floor, Georgia Concrete encountered strength deficiencies with the concrete supplied by Morgan Concrete. Georgia Concrete ordered higher strength ready-mix concrete from Morgan Concrete for future pours on the second-level slab but encountered the same strength deficiency. Georgia Concrete refused to pay Morgan Concrete, which, in turn, refused to supply more concrete.

Morgan Concrete attributed the strength issues to the mishandling of its product by Georgia Concrete. Morgan Concrete blamed Georgia Concrete for exposing the concrete to high ambient temperatures and for failing to comply with standards established by the American Society for Testing and Materials to sample, maintain, and test the concrete. Those errors, Morgan Concrete contended, caused its ready-mix concrete to dry out or to be "cooked," which lessened its strength.

The owner of the project, the general contractor, and Georgia Concrete elected to repair rather than replace the second-level slab. Project consultants

3

identified a "product failure (low break) problem" and a "lower than required 5000 PSI" in the second-level slab. The general contractor notified Georgia Concrete and Morgan Concrete that they were liable for two incidents of concrete failure.

Morgan Concrete filed a mechanic's lien on the building project for $408,733.35. Morgan Concrete also filed a claim with Westfield, which launched an investigation. Westfield provided a defense to Morgan Concrete under a reservation of rights. Westfield warned Morgan Concrete that its claim might not constitute "property damage" caused by an "occurrence" under the insurance policy or might be barred by several of its exclusions from coverage.

Georgia Concrete proposed to apportion repair costs by absorbing $98,796 and requesting $116,046 from Morgan Concrete. Georgia Concrete stated that its expenditures included the premium it had paid Morgan Concrete for higher-strength concrete; an x-ray taken of the second-level slab; the addition of fiber mesh "tendons" and other materials to strengthen the second-level slab; anticipated future expenses for making cosmetic repairs to the second-level slab; additional labor; and a premium paid to another company to supply concrete for the third level of the building.

Morgan Concrete rejected the proposal. The company disclaimed responsibility for the strength of its concrete after dispensing the product from its trucks. Morgan Concrete responded that, after it advised Georgia Concrete several

times how to handle the concrete, Georgia Concrete disregarded standard practices and failed to ensure that a certified field technician made and cured samples of the concrete. Morgan Concrete identified two deliveries in July when test cylinders showed that its concrete exceeded the strength of 5,000 pounds per square inch.

Morgan Concrete sued Georgia Concrete in a South Carolina court for foreclosure on the mechanic's lien bond, breach of contract, and quantum meruit, and Georgia Concrete filed an answer and a counterclaim for breach of contract. Georgia Concrete alleged that Morgan Concrete breached its agreement to provide concrete of a specified strength, which required Georgia Concrete to "perform repairs on the portions of the Project in which [the inferior] concrete was used, including but not limited to structural repair work [costing] in excess of $115,000 . . . on the Project's Level 2 Slab."

Westfield notified Morgan Concrete that it was withdrawing its defense. Westfield determined that Morgan Concrete caused Georgia Concrete no "property damage," which its policy defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property." Westfield also determined that the spoilage of the concrete Morgan Concrete supplied was barred by exclusions in the policy for "'Property damage' to [its] product," "'Property damage' to [its] work," and "Damages claimed for any loss, cost, or expense incurred by [it] or

others for the loss of, . . . inspection, repair, replacement, [or] adjustment . . . of '[its] product,' '[its] work,' or 'Impaired Property.'"

Morgan Concrete filed a complaint in the district court that Westfield breached its contract and owed a duty to resume its defense of and to indemnify Morgan Concrete for the costs it had incurred in its action against Georgia Concrete. Westfield moved for summary judgment and argued that its policy did not cover the claim for the reasons it had earlier disclosed to Morgan Concrete.

The district court ruled that Westfield had no duty to defend or indemnify and entered summary judgment in its favor. The district court "presume[d] the existence of an occurrence" based on "the unexpected (and unintended) self-desiccation of the concrete used for the Level 2 Slab," but determined the "property damage" was to the concrete and not to any "other component parts of the Level 2 Slab" or to "the structure as a whole." Alternatively, the district court determined that the "property damage" to the concrete supplied by Morgan Concrete "f[ell] squarely within the Policy's Exclusion for Damage to Product" and that the "remediation of the Level 2 Slab . . . to ameliorate problems with the concrete" was excluded from coverage as damage to the work of Morgan Concrete.

## II. STANDARD OF REVIEW

We review *de novo* a summary judgment. *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1337 (11th Cir. 2009).

6

### III. DISCUSSION

Morgan Concrete argues that Westfield was obligated to defend and indemnify it in the state action. Morgan Concrete argues that the concrete it supplied caused "property damage" because Georgia Concrete had to purchase and install external cable support systems to strengthen the slab. Morgan Concrete also argues that the exclusions for damage to its product or work do not apply because its "bad ready-mix concrete damaged other subcontractors' property" and the "Level 2 Slab."

In the policy that Westfield issued, "property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property." We must interpret the language in the policy consistent with Georgia law. *See Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294, 1300 (11th Cir. 2012). The Georgia Supreme Court has held that the term "property damage" means damage to property that was previously undamaged "and to damage beyond mere faulty workmanship." *Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.*, 746 S.E.2d 587, 591 (Ga. 2013). As a result, there is no coverage for "liabilities for the repair or correction of the faulty workmanship of the insured." *Id.*

The only "property damage" identified in the state lawsuit was damage to the product that Morgan Concrete supplied. Morgan Concrete alleged in its

complaint that its concrete was damaged through mishandling by Georgia Concrete. Georgia Concrete alleged in its counterclaim that it incurred economic losses to strengthen the concrete.

Westfield had no duty to continue to defend because there was no claim for "property damage" that was covered by the insurance policy. The insurance policy excluded from coverage "property damage" to a "product" that was "manufactured, sold, handled or distributed" by Morgan Concrete. That exclusion applied to the allegations by Morgan Concrete that Georgia Concrete damaged its product. The policy covered "property damage" that Morgan Concrete caused, but the claim against it was for breach of contract to recover costs attributable to repairing its defective product. And Morgan Concrete identified no allegation or evidence that its inferior concrete damaged "any property that [was] nondefective" in the slab or the structure. *See Taylor Morrison*, 746 S.E.2d at 591. Because the dispute between the concrete companies involved only damage to the inferior concrete and economic losses for repairs necessitated by the defective product, the insurance policy did not require Westfield to provide a defense.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Westfield Insurance.

8