A09A0404, A09A0405. IN RE ESTATE OF BELCHER (two cases).
(682 SE2d 581)

BERNES, Judge.

Gloria Prather Belcher, former wife of the deceased David Belcher, brought this declaratory judgment action against his estate and Teresa Belcher, the deceased's widow. At the time of his death, the decedent had in force a group term life insurance policy naming his widow as beneficiary. The decedent, however, had previously entered into an agreement with his former wife as part of their divorce to continue in force a life insurance policy naming her as

---

beneficiary. The central question in the declaratory judgment action was whether the decedent's former wife or his widow was entitled to the proceeds from the group term life insurance policy in force at his death. The trial court granted in part and denied in part the former wife's motion for summary judgment, concluding that she was entitled to $67,282.24 in policy proceeds, but that she could not pursue those proceeds from the deceased's widow in her individual capacity.

In Case No. A09A0404, the widow and the estate appeal the trial court's grant of summary judgment to the former wife on the issue of whether she was entitled to any of the insurance policy proceeds. They contend that the deceased's obligation to maintain life insurance for the benefit of the former wife did not extend past his retirement from state employment. They further argue that the decedent's group term life insurance policy that was in force at the time of his death was not a replacement policy for the original insurance policy that was in force at the time the decedent divorced his former wife.

In Case No. A09A0405, the former wife cross-appeals the trial court's denial of summary judgment to her on the issue of whether she could pursue the policy proceeds from the widow in her individual capacity. The former wife also contends that the trial court should have concluded that she was entitled to a judgment of $112,000 rather than $67,282.24 and that she was entitled to pursue fraud and other claims against the widow.

For the reasons set forth below, we affirm in Case No. A09A0404. We reverse in Case No. A09A0405 to the extent that the trial court's order precludes the former wife from recovering the policy proceeds from the widow in her individual capacity, but otherwise affirm.

> It is well established that on appeal of a grant of summary judgment, the appellate court must determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. This requires a de novo review of the evidence.

(Citations omitted.) *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998).

So viewed, the evidence shows that David Belcher ("Belcher") divorced his former wife, Gloria Prather Belcher, in 1991. Their previously entered Separation Agreement was made a part of their final decree of divorce. Paragraph 5 of the Separation Agreement

stated that

> [t]he Husband works for the State of Georgia, and he shall continue to keep the Wife covered with medical and health insurance presently carried on his State health insurance policy at no cost to his Wife.

Paragraph 6 provided that

> [t]he Husband presently has several life insurance policies with the Wife named as beneficiary, and he agrees to continue these life insurance policies in force with the Wife named as beneficiary, and to pay the premiums therefor until either party dies.

At the time the parties entered into the Separation Agreement, the Employees' Retirement System of Georgia (the "Retirement System") provided $112,000 of life insurance coverage on Belcher through a "3x," or three times salary, policy (the "3x Policy").

After the divorce, Belcher married Teresa Belcher, who remained his wife until the time of his death. In 1994, Belcher changed the beneficiary of the 3x Policy from his former wife to Teresa Belcher. The evidence does not show that the former wife knew of the change in beneficiary.

Belcher retired from state employment in 2004, and the 3x Policy terminated upon his retirement. Also upon his retirement, the Retirement System issued Belcher coverage under a group term life insurance policy in the amount of $67,282 (the "Group Policy"), which he could "retain[ ] with no further premium due." Belcher was asked to designate a beneficiary under the Group Policy, and he signed a form that provided that "[c]ompleting this section acknowledges my wish to continue the Group Term Life Insurance." The Retirement System further informed Belcher that "[y]ou can make changes to your beneficiary(ies) designation . . . at any time" upon completion of the specified form. Belcher named Teresa Belcher as his beneficiary under the Group Policy.

Belcher died on September 11, 2005. The state issued a check for $67,282.24 in life insurance proceeds to his widow, Teresa Belcher. The probate court subsequently issued letters testamentary to the widow authorizing her to discharge her duties as executrix under Belcher's will.

### Case No. A09A0404

1. The trial court found the Group Policy to be a replacement for the 3x Policy, and that the former wife was therefore entitled to the

proceeds of the Group Policy. The widow and estate appeal the trial court's ruling, contending that (a) Belcher's obligation to maintain life insurance for the benefit of the former wife did not extend past his retirement from state employment, and (b) the Group Policy was not a replacement policy. We disagree.

(a) The trial court correctly concluded that under the Settlement Agreement, Belcher's obligation to maintain life insurance for the benefit of his former wife extended past his retirement from state employment. "The meaning of a settlement agreement incorporated into a divorce decree should be determined according to the usual rules governing the construction of contracts. The cardinal rule thereof is to ascertain the intention of the parties." (Citations omitted.) *Kruse v. Todd*, 260 Ga. 63, 67 (1) (389 SE2d 488) (1990). And "[w]here the terms of the contract are clear and unambiguous, the court looks only to the contract to find the parties' intent." (Punctuation and footnote omitted.) *Quality Foods v. Smithberg*, 288 Ga. App. 47, 51 (1) (653 SE2d 486) (2007).

Paragraph 6 of the Settlement Agreement required Belcher to continue his "life insurance policies in force with the Wife named as beneficiary, and to pay the premiums therefor until either party dies." Under this clear and unambiguous language, Belcher's obligation to maintain life insurance naming his former wife as the beneficiary did not expire when he left his employment with the state. Rather, it expired only upon the death of either his former wife or himself. At the time Belcher and his former wife entered into the Separation Agreement, the 3x Policy was in force, and the former wife was the named beneficiary. Accordingly, under the plain terms of the Separation Agreement, Belcher was required to maintain the 3x Policy in force, with the former wife as the beneficiary, and to pay the premium thereon until either party died, irrespective of his retirement.

The widow and the estate argue, however, that Paragraph 5 of the Separation Agreement, which states in part that "[t]he Husband works for the State of Georgia," created an ambiguity requiring application of the rules of contract construction to determine whether Belcher's obligation to maintain life insurance terminated when he left state employment. See generally *Harris v. Distinctive Builders*, 249 Ga. App. 686, 688 (1) (549 SE2d 496) (2001). They also contend that the evidence showed that the former wife was gravely ill at the time the parties entered into the Separation Agreement, and that Belcher's obligations should not have extended past the five-year period that the former wife was expected to live.

We do not agree. Paragraph 5 specifically addresses health insurance coverage, and so the reference to Belcher's employment in that provision does not modify the terms of Paragraph 6, which

specifically addresses Belcher's separate obligation to maintain life insurance. Furthermore, extrinsic evidence of the former wife's illness cannot change the Separation Agreement's clear and unambiguous language as to the term of Belcher's obligation. "Parol evidence is inadmissible to add to, take from, or vary a written contract." OCGA § 13-2-2 (1). See *Quality Foods*, 288 Ga. App. at 51 (1).

Finally, the widow and estate argue that Belcher could not comply with the provision in Paragraph 6 requiring him to pay premiums until either party died since no premiums were required to be paid after Belcher retired. As such, they contend that performance of Paragraph 6 was rendered impossible following Belcher's retirement. We are unpersuaded. That Belcher was not required to pay policy premiums after his retirement is immaterial, as the only reasonable interpretation of Paragraph 6 of the Settlement Agreement is that the parties contemplated that Belcher pay premiums, but only to the extent necessary to ensure the former wife's receipt of the policy proceeds.

(b) Likewise, the trial court correctly found that the Group Policy was a replacement policy for the 3x Policy. The appellate courts have considered several cases in which, in the context of a divorce or a separation agreement, the specific insurance policy the obligor promised to maintain for the benefit of his wife or minor children became unavailable because the obligor's employer changed insurance providers or because the obligor left employment. See *Zobrist v. Bennison*, 268 Ga. 245, 247 (1) (486 SE2d 815) (1997) (employee retired and elected to convert policies to individual coverage); *Curtis v. Curtis*, 243 Ga. 611, 613 (255 SE2d 693) (1979) (employer changed insurance provider); *Sparks v. Jackson*, 289 Ga. App. 840, 841-842 (1) (658 SE2d 456) (2008) (although the employer-provided insurance policy in effect at obligor's death was not the same employer-provided policy in effect at time of divorce, the former wife was entitled to recover proceeds of the replacement policy in an amount equal to the insurance benefits at the time of the settlement agreement); *Whitehead v. Whitehead*, 191 Ga. App. 330, 330-331 (381 SE2d 757) (1989) (employer changed insurance provider). As the foregoing authority shows, if the original policy is replaced, the beneficiary's interest in that policy continues in the replacement policy, even if the obligor did not expressly promise to replace the original policy.

And here the trial court was entitled to find that the 3x Policy was replaced. "[W]here a divorce decree requires the husband to name his children or his former wife as beneficiaries of his life insurance policy and to keep the policy in force, the children or former wife obtain a vested interest in the policy proceeds." (Footnotes omitted.) *Sparks*, supra, 289 Ga. App. at 841-842 (1). If a

subsequent insurance policy replaces the policy or amount specified in the divorce decree, then the beneficiary's vested interest in the previous policy applies to the replacement policy. *Zobrist*, supra, 268 Ga. at 247 (1).[1] For example, in *Zobrist*, upon leaving his employment the insured exercised his right to convert his coverage under a group policy to individual policies. Id. at 246. Our Supreme Court concluded that the individual policies replaced the group policy. Id. at 247 (1). Similarly, where the employer canceled a group life insurance policy and obtained a new group life insurance policy, or changed insurance carriers, the new policy was construed as a replacement for the previous one. See *Curtis*, 243 Ga. at 613; *Whitehead*, supra, 191 Ga. App. at 330-331. On the other hand, where "the policies referred to in the divorce decrees were canceled or had lapsed and were not directly replaced," *Zobrist*, supra, 268 Ga. at 247 (1), succeeding new policies were not construed as replacements for the previous policies. See *Weiner v. Goldberg*, 251 Ga. 470, 471 (306 SE2d 660) (1983); *Larson v. Larson*, 226 Ga. 209, 209-210 (173 SE2d 700) (1970).

Since Belcher promised under the Settlement Agreement to keep the 3x Policy in force with the former wife as the named beneficiary, she had a vested interest in the proceeds of that policy. Then, upon Belcher's retirement, the 3x Policy terminated and the Group Policy was issued. At that time, Belcher was notified that his "life insurance coverage . . . may be *retained* with no further premiums due." (Emphasis supplied.) Belcher also was asked to designate a beneficiary under the Group Policy, and signed a form that provided that "[c]ompleting this section acknowledges my wish *to continue* the Group Term Life Insurance." (Emphasis supplied.) Given that the Group Policy was issued when the 3x Policy terminated, the nexus of both policies to Belcher's employer, and the notification to Belcher that he could "retain" and "continue" life insurance coverage, the Group Policy was properly construed as a replacement for the 3x Policy.

That the Group Policy, which did not require that Belcher pay premiums, might also be characterized as a retirement benefit does not alter its function as life insurance. Nor can we conclude that the difference in the amount of the death benefit precluded the Group Policy from replacing the 3x Policy. See, e.g., *Sparks*, 289 Ga. App. at 843 (1) (subsequent policy found to be a replacement policy although it did not provide the same benefits as the previous policy); *Pope v.*

---

[1] If the subsequent policy is not a replacement policy, the insured's "failure to comply with terms of the agreement and decree must be pursued against his estate and not against the beneficiary of a subsequent policy of insurance." *Weiner v. Goldberg*, 251 Ga. 470, 471-472 (306 SE2d 660) (1983).

*Skipper*, 197 Ga. App. 572 (398 SE2d 846) (1990) (wife had vested interest in $25,000 of a successor $41,000 policy).

For these combined reasons, the trial court properly concluded that the Group Policy was a replacement for the 3x Policy and that the former wife was entitled to the policy proceeds. We thus affirm the trial court's partial grant of summary judgment to the former wife.

### Case No. A09A0405

2. The former wife cross-appeals from the order of summary judgment, contending that the trial court erred in failing to apply its decision to the widow in her individual capacity, in failing to conclude that the former wife was entitled to $112,000, and in failing to declare that the former wife could pursue fraud and other claims against the widow. We agree that the trial court erred in holding that its decision did not apply to the widow in her individual capacity, but otherwise conclude that the former wife's claims of error are not ripe for appellate review.

(a) As previously noted, the trial court concluded that the Group Policy was a replacement rather than a new policy. The trial court, relying on *Weiner*, 251 Ga. at 471-472, also noted that if the insured allows an insurance policy to lapse and then obtains a new policy, any claim resulting from the insured's failure to keep the required policy in effect must be pursued against the insured's estate and not against the beneficiary named in the subsequent policy. The trial court then declared that the former wife was entitled to the payout of the Group Policy in the amount of $67,282.24, but that its decision was against the estate and not the widow individually.

The trial court's conclusion that the former wife could not pursue the widow in her individual capacity for the proceeds of the Group Policy, however, is inconsistent with its finding that the Group Policy was a replacement policy. *Weiner* does not control if the subsequent policy is a replacement for a policy in which the complainant had a vested interest. See *Zobrist*, 268 Ga. at 247 (1). Rather, the proceeds of the replacement policy remain subject to the complainant's interest and may be recovered from the named beneficiary of the replacement policy, which in this case was the widow. See id.; *Curtis*, 243 Ga. at 611-612. The trial court therefore erred in concluding that its decision did not apply to the widow in her individual capacity, and we reverse the trial court's summary judgment order to that extent.

(b) As to the former wife's contention that the trial court erred in failing to declare that she was entitled to $112,000, and in failing to declare that she could pursue fraud and other claims against the

widow, the trial court did not rule on these two issues. The trial court only determined that the Group Policy was a replacement policy and then declared the former wife was entitled to its payout. The order did not declare the parties' rights apart from the proceeds of the Group Policy, nor did the order address whether the widow was subject to liability for fraud or other separate claims. As such, the issues identified by the former wife are not ripe for appellate review. See *Pyle v. City of Cedartown*, 240 Ga. App. 445, 448 (3) (524 SE2d 7) (1999).

*Judgment affirmed in Case No. A09A0404. Judgment affirmed in part and reversed in part in Case No. A09A0405. Smith, P. J., and Phipps, J., concur.*

DECIDED JUNE 18, 2009 —
RECONSIDERATION DENIED JULY 29, 2009.

Life insurance. Morgan Superior Court. Before Judge George.
*David L. Lebowski*, for appellant.
*Lambert & Reitman, M. Joseph Reitman, Jr.*, for appellee.