**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 9, 2016**

# In the Court of Appeals of Georgia

A16A0399. R&G INVESTMENTS & HOLDINGS, LLC v. AMERICAN FAMILY INSURANCE COMPANY.

BARNES, Presiding Judge.

R&G Investments & Holdings, LLC sued American Family Insurance Company, seeking insurance payments and bad faith penalties for American Family's refusal to pay claims for losses to certain residential apartment buildings caused by vandalism and water damage. Following discovery, R&G Investments moved for partial summary judgment on its claim related to one of the vandalized buildings (Building S) and for summary judgment on American Family's related defenses, including a defense based on the insurance policy's vacancy exclusion. Concluding that genuine issues of material fact existed on the claim and defenses pertaining to Building S, the trial court denied R&G's motion for partial summary judgment and its subsequent motion for reconsideration. R&G Investments later moved for partial summary judgment on its claim related to the building that had sustained water

damage (Building T), and American Family cross-moved for summary judgment on the ground that the claim was barred by the policy's vacancy exclusion. The trial court denied R&G Investment's motion for partial summary judgment and granted American Family's cross-motion for summary judgment on the water-damage claim pertaining to Building T.

On appeal, R&G Investments challenges these summary judgment rulings by the trial court. For the reasons discussed below, we conclude that the uncontroverted evidence of record showed that Building S was under renovation at the time it was vandalized, and that, as a result, the insurance policy's vacancy exclusion did not bar coverage of the vandalism loss to that building. Accordingly, we reverse the trial court's denial of summary judgment to R&G Investments on American Family's vacancy-exclusion defense to that specific claim.[1] We affirm the trial court's summary judgment rulings in all other respects.

Summary judgment is proper if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "On appeal from the grant or

---

[1] The vacancy-exclusion defense was the ninth defense to liability in American Family's answer.

2

denial of summary judgment, the appellate courts conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party." *Bank of North Ga. v. Windermere Dev. Inc.*, 316 Ga. App. 33, 34 (728 SE2d 714) (2012).

So viewed, the record reflects that R&G Investments owns a residential apartment complex insured by American Family. When American Family issued the insurance policy in December 2011, R&G Investments had only recently bought the apartments and had decided to renovate them.

In February 2012, the apartment complex was unoccupied and undergoing extensive renovation at the direction of R&G Investments. The renovations to the individual apartment buildings were in various stages of completion. One night that month, several of the unoccupied apartment buildings, including Building S, were damaged by vandalism. R&G Investments sought coverage for the loss from American Family.

In November 2012, a water pipe burst in one of the apartment units in Building T, causing flooding in that unit and several adjacent ones. The renovations to Building T had been completed by that time, but only one of the eight units in the

3

building had been leased to a tenant. R&G Investments also sought coverage for this loss from American Family.

R&G Investments ultimately sued American Family, seeking payment of the insurance proceeds for the vandalism and water damage to the apartment buildings, as well as bad faith penalties and attorney fees for American Family's refusal to pay the claims. American Family answered, denying liability, and asserted several defenses, including that coverage of the losses was barred by the policy's vacancy exclusion and by R&G Investments's failure to fully cooperate with American Family's investigation of the claims.

Following discovery, R&G Investments moved for partial summary judgment on count 4 of its complaint, which sought recovery for the vandalism loss to Building S, and for summary judgment on several of American Family's related defenses.[2]

---

[2] Specifically, R&G Investments moved for summary judgment on American Family's third defense ("Plaintiff may not recover against American Family as Plaintiff has failed to comply with all conditions precedent to making a claim under this policy."); fourth defense ("Plaintiff's lawsuit is premature due to Plaintiff's failure to comply with the policy condition regarding Suit Against Us."); fifth defense ("Plaintiff's prayer for bad faith penalties and attorney's fees is insufficient in fact and in law. American Family has at all times acted in good faith and with reasonable and probable cause with respect to the actions it has taken, and Plaintiff therefore fails to state a claim under OCGA § 33-4-6 for any bad faith penalties and attorney's fees."); seventh defense ("Plaintiff has failed to comply with all statutory pre-conditions for asserting a claim under OCGA § 33-4-6."); eighth defense ("Plaintiff's

R&G Investments argued that the policy's vacancy exclusion was inapplicable to its residential apartment buildings, and that even if it did apply, Building S was undergoing renovations and thus was not "vacant" as defined by the exclusion. R&G Investments further argued that it had fully cooperated with American Family's investigation of its vandalism claim, and that American Family was subject to bad faith penalties as a matter of law.

The trial court denied R&G Investments's summary judgment motion and its subsequent motion for reconsideration. The trial court concluded that the vacancy exclusion was applicable to R&G Investments's apartment buildings and that genuine issues of material fact precluded the grant of summary judgment to R&G Investments on the remaining matters.

R&G Investments later moved for partial summary judgment on count 5 of its complaint, which sought recovery for the loss to Building T caused by the burst water pipe. American Family filed a cross-motion for summary judgment on that count,

[c]omplaint is barred as a result of Plaintiff's failure to comply with [its contractual] duties in the event of loss or damage, as Plaintiff has repeatedly failed to provide American Family with requested documents and further failed to produce a corporate representative competent to testify as to all aspects of this loss for Examination Under Oath."); and ninth defense ("Plaintiff's claims are excluded in part under the vacancy provisions contained within the applicable American Family policy.").

contending that the uncontroverted evidence showed that coverage for the loss was barred by the policy's vacancy exclusion. The trial court denied R&G Investments's motion for partial summary judgment and granted American Family's cross-motion for summary judgment on count 5 of the complaint. This appeal by R&G Investments followed.

1. At the outset, we note that R&G Investments has set forth several enumerations of error related to the trial court's summary judgment rulings, but the argument in its brief fails to follow the order and number of the enumerations of error, as required by Court of Appeals Rule 25 (c) (1). Our requirements for briefs "were created not to provide an obstacle, but to aid parties in presenting arguments in a manner most likely to be fully and efficiently comprehended by this Court; a party will not be granted relief should we err in deciphering a brief which fails to adhere to the required form." (Footnote omitted.) *Currid v. DeKalb State Court Probation Dept.*, 274 Ga. App. 704, 706 (1) (618 SE2d 621) (2005). "Accordingly, if we have missed something in the record or misconstrued an argument, the responsibility rests with counsel" for R&G Investments. (Citation and punctuation omitted.) *Pruitt v. State*, 323 Ga. App. 689, 690 (1) (747 SE2d 694) (2013).

6

We also note that by order dated November 5, 2015, this Court denied R&G Investments's motion to exceed the 30-page limit for briefs in civil cases. See Court of Appeals Rule 24 (f). While R&G Investments's brief complies with this page limitation, R&G Investments at several places in its brief points to the page limitation and refers to pages of the record from the trial court where it raised additional arguments. To the extent that R&G Investments is attempting to incorporate by reference those additional arguments into its appellate brief, that "practice is not approved by this Court[,] and we decline to look in the record for matters which should have been set forth in the brief." (Punctuation and footnote omitted.) *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 815 (1) (670 SE2d 469) (2008).

2. R&G Investments argues that the trial court erred in concluding that the policy's vacancy exclusion applied to its residential apartment buildings. We disagree.

"In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 614 (1) (299 SE2d 561) (1983). "In construing an insurance contract, a court must consider it as a whole, give effect to each provision, and interpret each provision to harmonize with each other." *York Ins. Co. v. Williams Seafood of Albany,*

7

*Inc.*, 273 Ga. 710, 712 (1) (544 SE2d 156) (2001). If a provision in the insurance contract is susceptible to more than one reasonable interpretation, the provision should be construed against the insurer. *Cincinnati Ins. Co. v. Magnolia Estates, Inc.*, 286 Ga. App. 183, 185 (648 SE2d 498) (2007). However, a party's proposed interpretation of a provision in an insurance contract is not reasonable and should be rejected if it would render a portion of the contract meaningless. Id. The construction and legal effect of an insurance contract are issues of law subject to de novo review on appeal. *Infinity Gen. Ins. Co. v. Litton*, 308 Ga. App. 497, 498 (2) (707 SE2d 885) (2011).

Among other provisions, the insurance policy at issue in this case excluded coverage for property damage caused by vandalism or water if the insured building was "vacant" for more than 60 consecutive days before the loss or damage occurred, but provided that a building under renovation was not considered vacant for purposes of the exclusion. The vacancy exclusion provided that when the policy is issued to the owner of the insured building, the building is considered vacant

> unless at least 31% of its total square footage is: (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or (ii) Used by the building owner to conduct customary operations.

8

The policy defined "operations" as "business activities occurring at the described premises."

"Under Georgia law, an insurance company is free to fix the terms of its policies as it sees fit, so long as they are not contrary to the law, and it may insure against certain risks while excluding others." (Citation and punctuation omitted.) *Sorema North American Reinsurance Co. v. Johnson*, 258 Ga. App. 304, 306 (574 SE2d 377) (2002). A vacancy exclusion "is intended to protect the insurer from the higher risk of loss associated with property that is not attended." Id. Consequently, vacancy exclusions worded like the provision in the present case "contemplate[] that customary operations occur *on the insured premises*." (Emphasis in original.) Id.

R&G Investments argues that the vacancy exclusion is a form contract provision inapplicable as a whole to its insured residential apartment buildings. According to R&G Investments, a residential apartment building is not occupied by its tenants or its owner for their customary business activities; rather, such buildings are occupied principally for the non-commercial activities (such as cooking, cleaning, sleeping, etc.) of its residents. Because the vacancy exclusion contemplates that customary business activities would be conducted on the premises, R&G Investments

9

maintains that the parties did not intend for the exclusion to have any application to the residential apartment buildings insured in the present case.

R&G Investments's construction of the vacancy exclusion is unreasonable. A construction of the vacancy exclusion that renders it inapplicable as a whole to residential apartment buildings would have the result of reading the provision entirely out of the parties' insurance policy, given that all of R&G Investments's insured buildings were residential apartments. The construction of an insurance contract that renders a provision mere surplusage clearly should be avoided under our rules of construction, and therefore we must reject R&G Investments's proposed interpretation. See *Magnolia Estates, Inc.*, 286 Ga. App. at 185.

In construing the terms of an insurance contract, we look to "what a reasonable person in the insured's position would understand them to mean." *Gulf Ins. Co. v. Mathis*, 183 Ga. App. 323, 324 (358 SE2d 850) (1987). Under the insurance policy issued in this case, American Family agreed to insure apartment buildings which R&G Investments intended to renovate and use for residential leasing purposes. Under the vacancy exclusion, which applied if an insured building was vacant for more than 60 consecutive days before the loss, a building was considered vacant unless it was under renovation or at least 31 percent of its square footage was being

10

used by the owner for its customary business activities. The customary business activity of the owner of a residential apartment building, of course, is the leasing of apartments to tenants for profit. Accordingly, bearing in mind the purpose behind a vacancy exclusion, we conclude that a reasonable person in R&G Investments's position would have understood the exclusion to mean that an insured apartment building would be considered vacant if it was not under renovation and less than 31 percent of the square footage was occupied by tenants. Hence, the vacancy exclusion is susceptible of only one reasonable construction and applies to R&G Investments's residential apartment buildings, as the trial court properly concluded.

2. After concluding that the vacancy exclusion applied to R&G Investments's residential apartment buildings, the trial court found that there were genuine issues of material fact as to whether there had been any renovations to the unoccupied Building S at the time of the vandalism, and thus as to whether the building was "vacant" for purposes of the exclusion. The trial court relied on the affidavit of American Family's senior field adjuster in deciding that genuine factual issues existed. On appeal, R&G Investments argues that the uncontroverted evidence showed that Building S was under renovation when the vandalism occurred and that the trial court erred in relying upon the senior field adjuster's affidavit, which

11

contained inadmissible hearsay and an attached exhibit that was not properly authenticated. We agree.

In moving for summary judgment on the issue of whether the vandalism loss to Building S was excluded from coverage under the vacancy exclusion, R&G Investments submitted the affidavit of the current resident manager of the apartment complex to prove that Building S was under renovation at the time of the loss. The resident manager had assisted in the management of the apartment buildings in February 2012 when the vandalism occurred. She averred that during that month, the apartment complex was in the final stages of a complete renovation by R&G Investments, with the renovations completed in some buildings but ongoing in others. The manager further averred that the renovations to the apartment buildings on the rear section of the property, which included Building S, were still in the process of being completed in February 2012 when the vandalism occurred.

The resident manager also was examined under oath about the renovations by counsel for American Family. During her examination under oath, the manager testified that she would "walk the property" to observe the status of the renovations on the buildings, and that the renovations to Building S had been started but not completed before the vandalism occurred.

12

In response, American Family submitted the affidavit of its senior field adjuster assigned to the vandalism claim. The field adjuster averred that after the claim was reported to him, he requested an onsite inspection of the property by Americlaim in March 2012. In the next paragraph of his affidavit, the field adjuster stated, without any further explanation, "On April 10, 2012, I received Mr. Dierker's report on the Building S, including photographs taken during his site inspection. (Copy of Erik Dierker's report is attached hereto as Exhibit 'A')." The next paragraph stated, "Mr. Dierker advised me that in the course of his inspection as to Building S, there did not appear to be any renovation work completed on that building." The field adjuster never averred that he had any personal knowledge regarding Building S or of the onsite inspection that had been conducted there.

Attached to the senior field adjuster's affidavit as Exhibit A was a multi-page report with photographs under a cover page listing "Eric Dierker" as the "Claim Rep" and "Estimator" for a company named "Adjustment Services Inc." Among other things, the cover page of the report listed the "Property" as Building S, the "Date Inspected" as March 16, 2012, and stated, "This is a repair estimate only." American Family did not submit an affidavit from Mr. Dierker or any other employee of Adjustment Services as part of its opposition to summary judgment.

13

In its reply brief in further support of its motion for summary judgment, R&G Investments argued that American Family had failed to submit any competent evidence creating a genuine issue of material fact regarding the renovation of Building S. R&G Investments asserted that the senior field adjuster's affidavit contained inadmissible hearsay and failed to lay a proper foundation for the admission of the report and photographs attached as an exhibit thereto.[3]

The trial court denied summary judgment to R&G Investments on the issue of whether Building S was under renovation when the vandalism occurred, and thus on whether coverage of the claim was excluded by the policy's vacancy exclusion. The trial court found "that the affidavit of the [senior field adjuster] . . . was sufficient to raise an issue of fact as to whether Building 'S' was under renovation, precluding summary judgment in favor of [R&G Investments]."

The trial court's reliance on the senior field adjuster's affidavit was in error. "A party opposing a motion for summary judgment, where the moving party has presented evidence of the necessary certitude, must, in [its] opposing affidavits, set

---

[3] R&G Investments's challenge in its reply brief to the affidavit on the grounds of hearsay and lack of proper foundation was sufficient to preserve its objection to the affidavit. See *D'Agnese v. Wells Fargo Bank, N.A.*, 335 Ga. App. 659, 661 (782 SE2d 714) (2016).

forth specific facts showing a genuine issue to be decided." (Citations and punctuation omitted.) *Bogart v. Wisconsin Institute for Torah Study*, 321 Ga. App. 492, 495 (3) (739 SE2d 465) (2013).

> [T]o be considered by the trial court, affidavits opposing summary judgment must be made on personal knowledge and must set forth such facts as would be admissible in the evidence. All hearsay evidence, unsupported conclusions, and the like, must be stricken or eliminated from consideration in a motion for summary judgment.

(Citation and punctuation omitted.) *Smith v. Dill's Builders*, 332 Ga. App. 491, 493 (2) (773 SE2d 444) (2015).[4] See *Holcomb v. Norfolk Southern R. Co.*, 295 Ga. App. 821, 822 (673 SE2d 268) (2009) ("Rules as to the admissibility of evidence are applicable in summary judgment proceedings, since the statute provides that all affidavits, depositions, etc. shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. OCGA § 9-11-56 (e).") (citation and punctuation omitted). Furthermore, the affiant generally must lay a proper foundation for the admission of

---

[4] Because R&G Investments filed its motion for summary judgment pertaining to Building S in September 2014, Georgia's revised Evidence Code applies. See Ga. Laws 2011, p. 99, § 101 (revised Evidence Code "shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date").

15

any document attached to the affidavit as an exhibit. See *Thomason v. FIA Card Svcs., N.A.*, 330 Ga. App. 603, 605 (768 SE2d 785) (2015). The requirement of authentication "shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." OCGA § 24-9-901 (a).

Here, the single statement as to the status of the renovation work to Building S in the senior field adjuster's affidavit was the recitation of a statement made to the adjuster by Mr. Dierker that "there did not appear to be any renovation work completed on that building." The adjuster's recitation of this out-of-court statement clearly constituted inadmissible hearsay and should not have been considered on summary judgment. See OCGA § 24-8-801 (c) ("'Hearsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

Nor should the report and photographs attached as Exhibit A to the senior field adjuster's affidavit have been considered. The field adjuster made no effort in his affidavit to lay a proper foundation for the admission of the exhibit as a business record or otherwise, and the exhibit was not self-authenticating under any of the categories enunciated in OCGA § 24-9-902. Compare *Jaycee Atlanta Dev., LLC v. Providence Bank*, 330 Ga. App. 322, 325 (2) (765 SE2d 536) (2014) (guaranties

16

attached as exhibits to affidavit were self-authenticating under OCGA § 24-9-902 (2)). The exhibit thus was not competent evidence regarding the renovations to Building S.

Because the senior field adjuster's affidavit did not include any admissible evidence regarding the status of the renovation work to Building S, the trial court erred in relying upon the affidavit to find that genuine issues of material fact existed on the issue of renovation. And given that there was no other evidence in the record that rebutted the affidavit and testimony of R&G Investments's rental manager that Building S was under renovation when the vandalism occurred, the uncontroverted evidence showed that the building was not "vacant" under the policy's vacancy exclusion. Consequently, the vacancy exclusion did not bar coverage for the vandalism loss to Building S as a matter of law, and the trial court erred in failing to grant summary judgment to R&G Investments on this issue.[5]

3. The insurance policy required R&G Investments to produce relevant documents, submit to an examination under oath, and otherwise fully cooperate with

---

[5] Because we conclude that the vacancy exclusion did not bar coverage for the vandalism loss to Building S, we need not address R&G Investments's alternative argument that American Family waived and was estopped from relying upon the vacancy exclusion.

17

American Family's investigation of a claim.[6] Under Georgia law, an insured is required "to provide any material information to the insurer that the insurer is entitled to receive under the insurance policy," and a failure to provide the requested information, "absent an excusable failure to do so, constitutes a breach of the insurance contract" that bars recovery by the insured. (Punctuation omitted.) *Hines v. State Farm Fire & Cas. Co.*, 815 F2d 648, 651 (11th Cir. 1987), citing *Halcome v. Cincinnati Ins. Co.*, 254 Ga. 742, 744 (334 SE2d 155) (1985). See *Allstate Ins. Co. v. Hamler*, 247 Ga. App. 574, 576-578 (545 SE2d 12) (2001). However, if there are factual questions regarding the degree of the insured's compliance with the insurer's request for information or the reasonableness of the insured's explanation for noncompliance, a jury must resolve whether the insured sufficiently cooperated with the insurer's request. See *United Acoustical & Drywall Systems v. Fidelity & Cas. Co. of N.Y.*, 222 Ga. App. 824, 827 (2) (476 SE2d 277) (1996); *Diamonds & Denims v. First of Ga. Ins. Co.*, 203 Ga. App. 681, 683 (417 SE2d 440) (1992).

---

[6]Among other things, the policy required R&G Investments to provide upon request "complete inventories of the damaged and undamaged property," including the "quantities, costs, values and amount of loss claimed"; to "[c]ooperate with [American Family] in the investigation or settlement of the claim"; and to submit to an examination under oath "about any matter relating to this insurance or the claim, including [R&G Investments's] books and records."

18

In opposing summary judgment, American Family contended that R&G Investments had not fully cooperated in its investigation of the vandalism claim because it failed to produce documentation reflecting the renovations performed on each of the damaged apartments buildings, thereby preventing American Family from determining what specific renovations were performed to Building S and when they were done. American Family also contended that R&G Investments should have designated a corporate representative other than its resident manager to submit to the examination under oath because other employees had more relevant information about the specific renovations. R&G Investments disputed these points, and the trial court held that whether R&G Investments sufficiently cooperated with American Family's investigation was a factual question to be resolved by the jury.

On appeal, R&G Investments contends that the trial court erred in denying its motion for summary judgment on the issue of whether it sufficiently cooperated with American Family's investigation of its vandalism claim. Specifically, according to R&G Investments, American Family could not rely on the insurance policy's provisions requiring cooperation with its investigation of the vandalism claim as a defense to this suit because American Family (a) never made a proper demand for an examination under oath to R&G Investments; (b) waived and was stopped from

relying on the cooperation provisions; and (c) was not harmed by R&G Investments's alleged failure to cooperate because the vacancy exclusion did not apply to the residential apartment buildings. We will address these arguments each in turn.

(a) R&G Investments's argument that the uncontroverted evidence showed that American Family never made a proper demand for an examination under oath is without merit. Counsel for R&G Investments submitted an affidavit with accompanying exhibits detailing the specific requests made to R&G Investments to submit to an examination under oath, identify a corporate representative fully competent to testify on behalf of the company about the renovations to the property and the vandalism loss, and produce relevant documents in connection with the examination. The affidavit clearly demonstrated that, at the very least, there was a factual dispute as to whether American Family made a proper demand for an examination under oath, precluding summary judgment on the issue.

(b) We likewise reject R&G Investments's argument that the uncontroverted evidence showed that American Family waived and was stopped from relying on the policy's cooperation provisions. Although somewhat unclear from its brief, R&G Investments appears to argue that because American Family investigated the vandalism claim without a proper reservation of rights, it waived and was stopped

20

from raising any potential defenses to that claim, including any defenses based on R&G Investments's failure to cooperate. But a reservation of rights is a term of art applicable in the specific context where an insurer *undertakes a defense of its insured.* See *Hoover v. Maxum Indemnity Co.*, 291 Ga. 402, 405 (1) (730 SE2d 413) (2012). In contrast, "[e]ven without disclaiming liability and giving notice of its reservation of rights, any insurer who merely proceeds to investigate a claim with knowledge of facts which might otherwise constitute a defense to coverage is not stopped from thereafter setting up the defense." (Emphasis omitted.) *Brazil v. Govt. Employees Ins. Co.*, 199 Ga. App. 343, 344 (2) (404 SE2d 807) (1991). See OCGA § 33-24-40 (3) ("Without limitation of any right or defense of an insurer otherwise, none of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer under the policy: . . . Investigating any loss or claim under any policy[.]"). Thus, R&G Investments has failed to demonstrate that it was entitled to summary judgment on the basis of waiver or estoppel.

(c) R&G Investments also appears to contend that because the vacancy exclusion was inapplicable as a whole to its residential apartment buildings, American Family had no basis for investigating whether the exclusion barred

coverage of the vandalism claim, and thus was not harmed by R&G Investments's alleged failure to fully cooperate in the investigation of that claim. But, as discussed supra in Division 2, the vacancy exclusion applied to R&G Investments's apartment buildings, and therefore American Family was entitled to investigate whether the exclusion barred the vandalism claim.

4. R&G Investments also argues that the trial court erred in denying its motion for summary judgment on the issue of whether it was entitled to bad faith penalties under OCGA § 33-4-6 for American Family's refusal to pay its vandalism claim. We disagree.

> To support a cause of action under OCGA § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith. . . . Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact.

(Footnote omitted.) *Assurance Co. of America v. BBB Svc. Co.*, 259 Ga. App. 54, 57 (2) (576 SE2d 38) (2002). "Bad faith is shown by evidence that under the terms of the policy upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no good cause for resisting and delaying payment."

(Punctuation and footnote omitted.) *Atlantic Title Ins. Co. v. Aegis Funding Corp.*, 287 Ga. App. 392, 393 (651 SE2d 507) (2007). The question whether the insurer acted in good or bad faith is normally for the jury. Id.

As previously noted, there are disputed questions of fact as to whether R&G Investments sufficiently cooperated with American Family's investigation of the vandalism claim, and thus whether it breached the insurance policy and was barred from recovery on that basis. Thus, at a minimum, a factual question remains as to whether American Family had a reasonable ground for contesting the vandalism claim and good cause for resisting payment to R&G Investments. Summary judgment thus was properly denied to R&G Investments on the issue of bad faith penalties.

*Judgment affirmed in part; reversed in part. Boggs and Rickman, JJ., concur.*