Dillard, Chief Judge, concurring in part and dissenting in part.
The majority's Herculean effort to manufacture ambiguity out of otherwise unexceptionable and plain policy language is perfectly understandable. Lee is a sympathetic party. He stepped up to help a dear friend during a difficult time, and for that, we commend him. But the policy says what it says, and no act of kindness can change that. Nevertheless, the majority has chosen to disregard the plain meaning of the policy and well-settled precedent in order to achieve a result to its liking-accomplishing this extraordinary feat with only a semicolon and an unsubstantiated and irrelevant deposition remark. In doing so, the majority has unnecessarily muddied the waters of our jurisprudence. Indeed, the dubious reasoning employed by the majority to create an ambiguity out of whole cloth will undoubtedly be used by future (and perhaps less sympathetic) litigants to achieve similar results. And because I believe the majority's decision sets a dangerous precedent that will have ramifications far beyond the dispute before us, I respectfully dissent.
Specifically, I disagree with the majority's holding in Division 1 reversing the trial court's grant of summary judgment in favor of Mercury.[1] And for this same reason, I believe that it is unnecessary to address, as the majority does in Division 2, whether Lee made material misrepresentations on the insurance application, such that they voided the policy as contemplated by OCGA § 33-24-7 (b), or whether Arnold-the independent insurance agent who filled out the insurance application-was a dual agent, such that his knowledge of *753 any misrepresentations was imputed to Mercury, and thus, bound the insurer.[2]
1. As an initial matter, Lee fails to specifically enumerate as error the trial court's grant of summary judgment on the ground that the policy language precludes coverage. And while Lee asserts that the property is covered under the policy within his specific enumeration that genuine issues of material fact remain as to whether he made material misrepresentations on the application, "a party cannot expand his enumerations of error through argument or citation in his brief."[3] Furthermore, Lee fails to support this bare assertion with any analysis or citation to authority.[4] And when confronted with Mercury's *136 appellate brief, which specifically noted this lack of analysis, Lee's response was silence (as he filed no reply).[5] Consequently, Lee has abandoned any challenge to the trial court's grant of summary judgment in this regard.[6]
2. Nevertheless, even if I were inclined to forgivingly construe Lee's threadbare claim as argument, the trial court correctly found that the language in the Mercury policy precluded coverage. Insurance contracts are, of course, governed by "the rules of construction applicable to other contracts, and words in the policy must be given *754 their usual and common signification and customary meaning."[7] It is similarly well established that the hallmark of contract construction is to ascertain the intention of the parties, as set out in the language of the policy.[8] And when the language of an insurance policy defining the extent of an insurer's liability is "unambiguous and capable of but one reasonable construction, the courts must expound the contract as made by the parties."[9] Importantly, the proper construction of a contract, and whether the contract is ambiguous, are "questions of law for the court to decide."[10]
In this matter, the completed application for the Mercury policy explicitly indicated that the property was Lee's primary residence and that the property was occupied by Lee, the named insured. The Declarations page of the policy lists the named insured as "Ronald W Lee[,] A Single Man" and identifies the property location as "7066 Dalmatia Drive in Riverdale, GA 30296." And on the first page of the policy, under the heading titled "Agreement," it states: "We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy. You agree that the policy has been issued in reliance upon statements in the Declarations and the application." Turning to the "Definitions" section, the policy in part provides:
"Insured location" means:
(a) the residence premises;
(b) that part of any other premises, other structures and grounds, used by you as a residence and which is shown in the Declarations or a one or two family dwelling which is acquired by you during the policy period for your use as a residence and reported to us within thirty days of its acquisition.[11]
*137 *755 The policy further provides: " 'Residence premises' means the one, two, three or four family dwelling, condominium or rental unit, other structures and grounds, used principally as a private residence; where you reside and which is shown in the Declarations." And under the "Coverage" section of the policy, it states: "We cover: the dwelling on the residence premises shown in the Declarations used principally as a private residence...." Additionally, the word "reside" is commonly defined, inter alia, as "[t]o dwell permanently or for a considerable time, to have one's settled or usual abode, to live, in or at a particular place."[12]
Here, the application indicated that the property being insured was a "primary residence" and that Lee "occupied"[13] the property. The plain language of the Mercury policy insuring the subject property then provides that it covers the residence premises and defines such as a private residence where the insured resides. Thus, the policy required as a condition of coverage that the insured use the property as his private residence. But it is undisputed that although Lee would stay at the 7066 Dalmatia Drive house from time to time when traveling for work, he did not reside there according to a common-and indeed his own-understanding of that term, but rather, resided in South Carolina with his wife. In fact, in his deposition, Lee adamantly claims that he never intended to live at the home and that Arnold was aware that he would only be staying there when his travel schedule permitted. Lee nonetheless asserts that the subject property was covered by the policy because it did not define the term "primary residence." But this argument ignores the fact that our case authority has not required that this term be defined in a policy in order to determine (for coverage purposes) whether an insured "resides" at the property to be insured.[14]
*756 Nevertheless, the majority argues that whether the policy language required Lee to reside at the home as a condition for coverage is at best ambiguous. And faced with the policy's plain language belying this contention, *138 the majority conscripts the semicolon separating the term "private residence" and "where you reside" in the definition of "residence premises," and assigns it the disjunctive properties of the word "or." So tasked, the majority then asserts that the semicolon's placement could allow a layperson to understand "residence premises" to mean "the one, two, three or four family dwelling, condominium or rental unit, other structures and grounds, used principally as a private residence" or"where you reside and which is shown in the Declarations." Finally, the majority maintains that my reading of the "residence premises" definition, conjunctively rather than disjunctively, rewrites the policy by removing the semicolon.
In considering the majority's argument, I begin by acknowledging that, in some situations, "[p]unctuation is an important indicator of meaning."[15] That said, the Supreme Court of the United States has rightly noted that it "will first take the instrument by its four corners, in order to ascertain its true meaning; if that is apparent, on judicially inspecting the whole, the punctuation will not be suffered to change it."[16] Similarly, this Court has held that "[t]he punctuation of an instrument may be considered when the meaning is doubtful, but it cannot control if the meaning otherwise plainly appears."[17] Indeed, punctuation is "always subordinate to the text, and is never allowed *757 to control its meaning."[18] Put simply, "the words control the punctuation marks, and not the punctuation marks the words."[19]
Here, the majority argues that the placement of the semicolon creates ambiguity in the "residence premises" definition, thus burdening that punctuation mark with a laboring oar that, under our case law and common use, it was never meant to carry. Moreover, following the majority's grammatical logic to its necessary conclusion, if one construes the definition of residence premises disjunctively, the subject policy would provide coverage for "the one, two, three or four family dwelling, condominium or rental unit, other structures and grounds, used principally as a private residence" without any requirement that such dwelling be "shown in the Declarations." Suffice it to say, such a tortured reading would then put this definition at odds with the "Coverage" section of the policy, which as previously noted provides that Mercury covers "the dwelling on the residence premises shown in the Declarations used principally as a private residence...." This would then run afoul of our well-established principle that "[i]n construing an insurance contract, a court must consider it as a whole, give effect to each provision, and interpret each provision to harmonize with each other."[20] And the *758 majority opinion runs further *139 afoul of this principle when it ignores the language in the application indicating that the property was being insured as a "primary residence" that Lee occupied, as well as the first lines of the policy itself, which provide that it was issued in reliance on that application and the declarations. Indeed, when an application for insurance is "attached to or made a part of an insurance contract by reference, the contract must be construed according to the terms contained therein as amplified, extended or modified by the application."[21]
Moreover, even if I were inclined to assign the semicolon the level of import the majority claims it deserves, I disagree that it supports the result the majority reaches. As The Chicago Manual of Style explains, "[i]n regular prose, a semicolon is most commonly used between two independent clauses not joined by a conjunction to signal a closer connection between them than a period would."[22] This description of the semicolon's most common use is echoed by Garner's Modern American Usage, which describes the semicolon as "a kind of supercomma" that "separates sentence parts that need a more distinct break than a comma can signal, but that are too closely connected to be made into separate sentences...."[23] And these descriptions of the semicolon's most common use do not appear to be in conflict with the description offered by the majority-"[t]he semicolon is normally employed in marking off a series of sentences or clauses of coordinate value, that is, to separate consecutive phrases or clauses which are independent of each other grammatically, but dependent alike on some word preceding or following."[24] It is simply baffling that *759 the majority believes this language somehow justifies the insertion of an "or" in the definition of "residence premises" or disjunctive treatment of the independent clauses at issue. Given these particular circumstances, I find the majority's construction of the "Residence premises" definition entirely unpersuasive. Accordingly, the trial court correctly concluded that the policy did not provide Lee with coverage and that Mercury *140 was entitled to summary judgment on that ground.
3. Lee further contends that the trial court erred in granting summary judgment because genuine issues of material fact remain as to whether Mercury was estopped from voiding the contract based on the lengthy delay between when it learned of the misrepresentation in the application and when it denied coverage. But to the extent Lee's contention here can be construed as an argument that Mercury is estopped from asserting that the language in its policy precluded coverage, this contention likewise lacks merit.
Under Georgia law, even without disclaiming liability and giving notice of its reservation of rights, "any insurer who merely proceeds to investigate a claim with knowledge of facts which might otherwise constitute a defense to coverage is not estopped from thereafter setting up the defense."[25] Indeed, OCGA § 33-24-40 provides that investigating any loss or claim under any policy shall not be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer under the policy.[26] Thus, under the statute, Mercury's investigation of Lee's claim, in and of itself, cannot support Lee's contention that the insurer waived or is estopped from asserting any defense.[27]
Furthermore, for estoppel to arise, there "must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his injury."[28] Here, although Lee *760 argues that Mercury's seven-month investigation of his claim was merely subterfuge intended to prevent him from filing a lawsuit until such an action was time-barred, he offers only speculation in support of this assertion. And more importantly, even if we were to assume that Mercury's investigation was a dilatory tactic, Lee has failed to even allege how he was injured, given that he, in fact, filed a timely lawsuit to enforce payment on his claim. Given these particular circumstances, Lee's argument that Mercury is estopped from voiding the policy lacks merit.[29]
Nevertheless, the majority argues that given the delay in denying Lee's claim and Lee's expert's testimony that such a delay was inordinate, genuine issues of material fact exist as to whether Mercury is estopped from voiding the policy and cites several cases that it claims supports this position. But these cases are inapposite. In American Safety Indemnity Company v. Sto Corp.,[30] we held that the insurer waived its defense that material misrepresentations in applications *141 entitled it to rescind policies, when it failed to announce its intent to rescind the policies after learning of the alleged misrepresentations, but chose to issue a denial of coverage and continued to treat the policies as if they remained in force with respect to other claims.[31] Similarly, in Lively v. Southern Heritage Insurance Company,[32] we held that summary judgment was not warranted because fact issues remained as to whether the insurer waived its defense that the policy was void based on material misrepresentations in the application when it failed to assert such defense until after the insured filed a lawsuit and never returned the insured's premiums.[33] Furthermore, none of the cases cited by the majority even mention OCGA § 33-24-40, much less discuss the statute's implications. Accordingly, the trial court did not err in finding that no genuine issue of *761 material fact existed as to whether Mercury's lengthy investigation of Lee's claim estopped it from voiding the homeowner's insurance policy.[34]
4. Lee further argues that the trial court also erred in denying his cross-motion for summary judgment. But given that the trial court correctly granted summary judgment in Mercury's favor on the ground that the policy at issue precluded coverage for the subject property, this argument-and the majority's agreement with it-is without merit.
For all these reasons, I would affirm the trial court's grant of summary judgment in favor of Mercury.
I am authorized to state that Presiding Judge Ray and Judges Andrews, Branch, and Bethel join this dissent.

I concur in judgment only to Division 4 of the majority opinion, which affirms the grant of summary judgment to Mercury on the issue of bad faith. I also concur in the judgment only as to Division 5, which affirms the trial court's denial of Lee's motion to compel discovery, and to Division 6, which affirms the trial court's denial of Lee's motion to strike the affidavit of Mercury's director of underwriting.

See Banks v. Brotherhood Mut. Ins. Co., 301 Ga. App. 101, 104 (2), 686 S.E.2d 872 (2009) ("A grant of summary judgment must be affirmed if right for any reason. It is the grant itself that is to be reviewed for error, and not the analysis employed." (punctuation omitted)).

Smyrna Dev. Co. v. Whitener Ltd. P'ship, 280 Ga. App. 788, 790 (1), 635 S.E.2d 173 (2006) (punctuation omitted); accord Am. Mgmt. Servs. E., Inc. v. Fort Benning Family Communities, LLC, 318 Ga. App. 827, 830 (2), 734 S.E.2d 833 (2012) ; Cross v. Ivester, 315 Ga. App. 760, 763 (1) n. 1, 728 S.E.2d 299 (2012).

See, e.g., Sirdah v. N. Springs Assocs., LLLP, 304 Ga. App. 348, 352 (2), 696 S.E.2d 391 (2010) ("[M]ere conclusory statements are not the type of meaningful argument contemplated by [our rules]."). As the majority notes, Lee made a more detailed argument below that his loss was covered by the subject policy. Thus, his failure to do so on appeal is telling.

But see, e.g., Am. Strategic Ins. Corp. v. Helm, 327 Ga. App. 482, 486 n.2, 759 S.E.2d 563 (2014) (noting that, to the extent appellant raised new arguments in a reply brief, those arguments had been waived and would not be considered).

See Estate of Nixon v. Barber, 340 Ga. App. 103, 110 (2), 796 S.E.2d 489 (2017) (holding that appellant abandoned claim of error by failing to provide citation to authority in support of same); Smyrna Dev. Co., 280 Ga. App. at 790 (1), 635 S.E.2d 173 (holding that appellant abandoned any argument that was not specifically enumerated as error, even though assertion that trial court erred with regard to subject of argument was buried within appellant's brief). See generally Court of Appeals R. 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned."). In support of its argument that Lee has not abandoned any claims, the majority cites my opinion in Woods v. Hall, 315 Ga. App. 93, 95-96, 726 S.E.2d 596 (2012), in which we exercised our discretion to review the appellant's claims despite his nearly complete failure to comply with this Court's rules. But what the majority fails to acknowledge is that, despite reviewing appellant's claims, we stated unequivocally that we were authorized to treat such claims as abandoned. Id. at 96, 726 S.E.2d 596. That we declined to do so in that instance was, not surprisingly, due to appellant's status as a pro se litigant. Id. at 95, 726 S.E.2d 596.

Roberson v. Leone, 315 Ga. App. 459, 462, 726 S.E.2d 565 (2012) (punctuation omitted); accord Turner v. Gateway Ins. Co., 290 Ga. App. 737, 739, 660 S.E.2d 484 (2008).

See Roberson, 315 Ga. App. at 462, 726 S.E.2d 565 (punctuation omitted); accord Infinity Gen. Ins. Co. v. Litton, 308 Ga. App. 497, 500, 707 S.E.2d 885 (2011).

Roberson, 315 Ga. App. at 462, 726 S.E.2d 565 (punctuation omitted); accord Litton, 308 Ga. App. at 500, 707 S.E.2d 885.

Roberson, 315 Ga. App. at 462, 726 S.E.2d 565 (punctuation omitted); accord Clayton v. S. Gen. Ins. Co., 306 Ga. App. 394, 396, 702 S.E.2d 446 (2010).

In footnote 3 of its opinion, the majority notes that the definition for "Insured location" only comes into play in the portion of the policy providing "Coverage F-Medical Payments to Others" and is not implicated in determining coverage for a loss due to a fire. But while the term "Insured location" seems to only appear in the section noted by the majority, nothing in the policy explicitly anchors that term exclusively to Coverage F nor otherwise precludes it from being employed as part of construing the policy as a whole as our case authority demands. See York Ins. Co. v. Williams Seafood Albany, Inc., 273 Ga. 710, 712, 544 S.E.2d 156 (2001) ; accord Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 269 Ga. 326, 328, 498 S.E.2d 492 (1998) ; McCann v. Glynn Lumber Co., 199 Ga. 669, 674, 34 S.E.2d 839 (1945).

The Compact Oxford English Dictionary 1567 (2d ed. 1991); see also Black's Law Dictionary 1310 (9th ed. 2009) (defining "residence" as, inter alia, "[t]he act or fact of living in a given place for some time ... The place where one actually lives, as distinguished from a domicile ... means bodily presence as an inhabitant in a given place ... Sometimes though, the two terms [residence and domicile] are used synonymously ... A house or fixed abode; a dwelling....").

See The Compact Oxford English Dictionary 1198 (2d ed. 1991) (defining "occupied" as, inter alia, "Taken possession of; held in possession, dwelt in....").

See Varsalona v. Auto-Owners Ins. Co., 281 Ga. App. 644, 645-46, 637 S.E.2d 64 (2006) (holding that insurance policy, which unambiguously required as a condition of coverage that the insureds use the residence premises principally as their private residence, provided no coverage for property damage to the insured residence because insureds never used the insured property as their residence); Epps v. Nicholson, 187 Ga. App. 246, 246-47 (1), 370 S.E.2d 13 (1988) (holding that fire-insurance policy had two requirements for coverage: (1) dwelling must be place wherein insured resided, and (2) dwelling must be shown as residential premises in declarations; therefore, insured's failure to reside in home covered under residential fire insurance policy precluded coverage). Cf. Hill v. Nationwide Mut. Fire Ins. Co., 214 Ga. App. 715, 717-18, 448 S.E.2d 747 (1994) (holding that language in insurance policy did not require insured to live at premises in order for dwelling to be covered because unlike the policy in Epps, which when defining "residence premises" included the word "and" between "where you reside" and "which is shown ... [on the declaration page]," and thus required the insured to live on the property, the conjunctive "and" does not appear in the policy at issue, but, in contrast, the disjunctive "or" does); Ga. Int'l Life Ins. Co. v. Bear's Den, Inc., 162 Ga. App. 833, 834-35 (1), 292 S.E.2d 502 (1982) (holding that language providing for two separate means to determine when insurance policy became enforceable, which contained no conjunctive or disjunctive terms, was to be read disjunctively when either of the means permitted under Georgia case law).

Hill, 214 Ga. App. at 717, 448 S.E.2d 747 (punctuation omitted).

Ewing's Lessee v. Burnet, 36 U.S. 41, 54, 11 Pet. 41, 9 L.Ed. 624 (1837). The majority makes much of the criticism leveled against Burnet in Reading Law: The Interpretation of Legal Texts by Antonin Scalia and Bryan Garner (1st ed 2012). See Scalia & Garner, supra, at 162. While it is perhaps true that some of the language contained in Burnet is unnecessarily restrictive or "anachronistic" in describing when punctuation can or should be used by courts to help ascertain the meaning of a law or instrument, the admonition by the Supreme Court of the United States against elevating punctuation over language to create ambiguity when there is none remains just as forceful now as it was in 1837. And nothing in Reading Law suggests otherwise.

Bridges v. Home Guano Co., 33 Ga. App. 305, 311, 125 S.E. 872 (1924) (punctuation omitted).

Id. (punctuation omitted).

Id. (punctuation omitted).

York Ins. Co., 273 Ga. at 712, 544 S.E.2d 156 ; accord R&G Inv. & Holdings, LLC v. Am. Family Ins. Co., 337 Ga. App. 588, 592 (2), 787 S.E.2d 765 (2016) ; see Royal v. Ga. Farm Bureau Mut. Ins. Co., 333 Ga. App. 881, 882, 777 S.E.2d 713 (2015) ("In construing an insurance policy, we begin, as with any contract, with the text of the contract itself. One of the most well-established rules of contract construction is that the contract must be construed as a whole, and the whole contract should be looked to in arriving at the construction of any part." (punctuation omitted)). As additional support for its interpretation of the policy, the majority cites to deposition testimony provided by Mercury's director of underwriting, in which he states that Mercury "use[s] the same policy contract for primary or secondary dwelling." The majority's reliance on this testimony is misplaced. Even if the director's assertion is correct, it fails to account for the entirety of the policy, which would necessarily include the declarations page and the application. Consequently, the majority's contention that our reading of the policy is such that a beach, mountain home, or other secondary dwelling would never be covered under a Mercury insurance policy is baseless. Moreover, and importantly, the director was not asked specific coverage questions during his deposition, leaving one to wonder how he would have responded if asked more pointedly whether the policy would cover property not listed in the declarations page, as the majority's construction would allow. Furthermore, nothing else in the record remotely supports the director's remark, and it is curious that the majority finds the director's statement in this context so convincing yet puts so little credence in the same director's averment as to whether the application contained a material misrepresentation. Regardless, when, as here, the terms of the contract are clear and unambiguous, "the court looks only to the contract to find the parties' intent." Quality Foods, Inc. v. Smithberg, 288 Ga. App. 47, 51 (1), 653 S.E.2d 486 (2007). And it is well settled that parol evidence is inadmissible to "add to, take from, vary or contradict the terms of a written instrument." Preferred Risk Mut. Ins. Co. v. Jones, 233 Ga. 423, 424 (1), 211 S.E.2d 720 (1975) ; accord OCGA § 13-2-2 (1) ; In re Estate of Belcher, 299 Ga.App. 432, 436 1, 682 S.E.2d 581 2009. Moreover, "[w]hile parol evidence as to a party's understanding of the contract is admissible to explain ambiguities and to aid in the construction of contracts, it is not admissible to contradict or construe an unambiguous contract." Willesen v. Ernest Commc'ns, Inc., 323 Ga. App. 457, 464 (3), 746 S.E.2d 755 (2013) (punctuation omitted). I maintain there is no such ambiguity here.

West v. Rudd, 242 Ga. 393, 396 (3), 249 S.E.2d 76 (1978) ; accord Canal Indem. Co. v. E.M.C. Motors, Inc., 227 Ga. App. 84, 85 (1), 488 S.E.2d 126 (1997) ; see OCGA § 33-24-16 ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy." (punctuation omitted)). I recognize that the bulk of the majority's opinion focuses on whether the application's designation as a primary residence constituted a material misrepresentation. But this issue is separate and distinct from the coverage issue, which necessarily requires us to construe the insurance policy as a whole (including the language contained in the application). Furthermore, while Lee testified that he never read the Mercury application or, for that matter, the policy itself, "[a]s a general rule, an insured has a duty to read and examine an insurance policy to determine whether the coverage requested was procured." Traina Enter., Inc. v. Cord & Wilburn, Inc. Ins. Agency, 289 Ga. App. 833, 837 (2), 658 S.E.2d 460 (2008).

The Chicago Manual of Style § 6.56, p. 389 (17th ed. 2017).

Bryan A. Garner, Garner's Modern American Usage 659 (2d ed. 2003) (emphasis supplied).

Springtime, Inc. v. Douglas, 228 Ga. 753, 755 (1), 187 S.E.2d 874 (1972).

R&G Inv. & Holdings, 337 Ga. App. at 599 (4) (b), 787 S.E.2d 765 (punctuation omitted).

See OCGA § 33-24-40 (3) ("Without limitation of any right or defense of an insurer otherwise, none of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer under the policy: ... [i]nvestigating any loss or claim under any policy[.]").

See R&G Inv. & Holdings, LLC, 337 Ga. App. at 598-99 (4) (b), 787 S.E.2d 765 (holding that property insurer's investigation of vandalism claim without proper reservation of rights did not result in waiver or estoppel precluding insurer from raising any potential defenses to claim, including any defenses based on insured's failure to cooperate); Brazil v. Gov't Emp. Ins. Co., 199 Ga. App. 343, 344 (1), 404 S.E.2d 807 (1991) (noting that pursuant to OCGA § 33-24-40, evidence of a delay in asserting a defense pending a full and complete investigation of insured's claim would not be material to the issue of whether insurer waived its defense).

Capital City Developers, LLC v. Bank of N. Ga., 316 Ga. App. 624, 628-29 (2), 730 S.E.2d 99 (2012) (punctuation omitted); see Robinson v. Boyd, 288 Ga. 53, 58 (4), 701 S.E.2d 165 (2010) (holding that "estoppel requires an act on the part of the one intended to influence the other, and detrimental reliance upon that act by the other" (punctuation omitted)); see also OCGA § 24-14-29.

See Ga. Farm Bureau Mut. Ins. Co. v. Vanhuss, 243 Ga. App. 26, 27, 532 S.E.2d 135 (2000) (holding that insurer's initial representation that the insured was covered and its initial agreement to defend him did not estop it from later denying coverage given that the insured did not detrimentally rely on the decision to defend the suits); Allstate Ins. Co. v. Sapp, 223 Ga. App. 443, 445, 477 S.E.2d 869 (1996) (holding that insured's failure to show justifiable reliance or a detrimental change in position precluded his claim that automobile insurer was estopped from denying coverage).

342 Ga. App. 263, 802 S.E.2d 448 (2017).

See id. 342 Ga. App. 263 (4), 802 S.E.2d at 455-56.

256 Ga. App. 195, 568 S.E.2d 98 (2002).

See id. at 198-99 (2), 568 S.E.2d 98 ; Thompson v. Permanent Gen. Assur. Corp., 238 Ga. App. 450, 452, 519 S.E.2d 249 (1999) (holding that upon learning of a misrepresentation in insurance application, insurer waives defense that misrepresentation voided the policy if it treats the policy as valid and binding and retains insured's premiums as earned).

See supra notes 26 and 27.